THE TOPGALLANT.

RICHARDS et al. v. THE TOPGALLANT (BASTRUP, Intervener).

(District Court, D. Washington, N. D.    January 3, 1898.)

SEAMEN—LEAVING VESSEL—ABUSIVE TREATMENT—WAGES.

Seamen are not justified in leaving the ship by reason of abusive words from the master, nor is their subsequent statement to him that they desire to leave the vessel, coupled with a demand for their wages, such insolence as will justify him in discharging them, and claiming forfeiture of their wages. And where, in such case, he tells them they may leave, but that he will not pay their wages, they are entitled to recover, not full wages, but wages only to the time of leaving.

This was a libel in rem by Eugene Richards and others against the bark Topgallant to recover seamen's wages.

P. P. Carroll, for libelants and intervener.
Metcalfe & Jury, for claimant.

HANFORD, District Judge.    This is a suit in rem to recover wages, commenced by part of the crew of the bark Topgallant, in which the first mate has filed an intervening libel, also claiming wages.    It appears by the pleadings and proofs that the libelants and the intervener shipped at San Francisco for a voyage to Puget Sound and return, and they proceeded in the vessel from San Francisco to Port Blakely, and thence to Seattle, and, while at Seattle, engaged in taking in cargo, there was difficulty between them and the captain.    The captain had given orders to the first mate to move the vessel to a different position for convenience in receiving coal, and the mate neglected to have this done until after working hours.    After 7 o'clock in the evening the mate asked the men if they would then haul the ship, to which they answered that they would not, and the vessel was not moved that night, and in consequence of this neglect she was delayed in lading.    The captain was absent from the ship from the time of giving the order to the mate until the next morning.    On being informed by the mate that the men had refused to haul the ship when requested, he reprimanded the crew, and ordered a discontinuance of coffee and a luncheon, which, until that time, during the loading of the vessel, had been served to the men at 9 o'clock in the forenoon, as an extra in addition to the regular breakfast, dinner, and supper.    There is a conflict in the testimony as to the conduct and exact words of the captain at this time, and as to threats which the men allege he made of future severity.    A day or two after this occurrence, these libelants informed the captain that they wished to leave the ship, and asked him for their wages, which he refused to pay.    He informed them, however, that they could leave the vessel if they wished to, but that, if they did leave, he would not pay them their wages.    The libelants did leave the vessel, and, after filing their libel, one of them returned to the vessel during the absence of the captain and mate, to induce other members of the crew to desert. When the captain returned, finding the man there, and the purpose for which he came, he became angry, and, the mate having returned

about the same time, he gave expression to his anger by upbraiding the mate for permitting the man to come aboard, using expressions which were offensive, and refusing to hear the mate's explanation. After this occurrence, the mate informed the captain that he wished to leave the vessel, and the captain told him to do so at once, but refused to pay him.

It is my opinion that the libelants were not justified in leaving the vessel before termination of the voyage for which they shipped, by reason of abusive treatment at the hands of the captain; neither was their conduct disobedient or insolent to such a degree as to authorize the captain to discharge them, and claim forfeiture of their wages. The libelants, however, wished to leave the vessel, and so informed the captain; therefore they cannot claim that by telling them to go the captain discharged them unjustly, so as to entitle them to wages for the entire voyage. Upon being told by the captain that they could leave the vessel, they had a right to take him at his word, so that their contract for services in the vessel was, in effect, terminated by mutual consent. · The captain seems to have acted upon a mistaken idea that the wages of seamen are forfeited by quitting the service before fulfillment of the entire contract, even when in doing so there is no disobedience. But in law seamen cannot be treated as deserters, and their wages forfeited, unless they leave the vessel, and remain absent, without leave of the commander. The rule is that, when the seamen's contract is terminated before conclusion, by mutual assent, the seamen are entitled to wages for the time of their actual service at the rate fixed by their contract. If the captain discharges them before termination of the voyage, without justifiable cause, they are entitled to wages for the entire voyage, and the amount of their expenses in returning to the port of discharge. Deserters from a vessel are not entitled to anything.

According to the statement of the captain, the following balances are due, after making all deductions for advances for the time the men actually were in the service of the ship, to wit: Henry Bastrup, $51.50; W. Martin, $31.90; Richard Nielson, $6.61; W. Knispel, $33; Askel Svendsen, $22.05; Gustav Olinder, $22.10; Emil Johnson, $20.50; Eugene Richards, $17.05. A decree will be entered in favor of the libelants and intervener, respectively, for the above sums and costs.

It appears by the testimony that Martin Anderson was convicted of broaching cargo, and the captain rightfully charged him with the value of the stolen goods, and also paid his fine, altogether amounting to more than the wages he earned; so there is nothing due to him.