## UNITED STATES STEEL PRODUCTS CO. et al. v. ADAMS.

### THE STEEL TRADER.

(Circuit Court of Appeals, Fifth Circuit. May 13, 1926.)

No. 4759.

1. Seamen ⬅️12—Seaman who has signed articles, discharged without cause, has right of action for breach of contract (Rev. St. § 4527 [Comp. St. § 8318]).

Rev. St. § 4527 (Comp. St. § 8318), requiring payment to a seaman who has signed articles, on his discharge without cause, of wages earned and in addition a sum equal to one month's pay, merely prescribes what shall be paid at the time of discharge, and is not a limitation of liability of the ship or owner for breach of the contract.

2. Seamen ⬅️12.

In the absence of statute requiring different result, after entering on the voyage provided for in the shipping articles, the ship is pledged to complete execution of the contract.

3. Seamen ⬅️12—Seaman wrongfully discharged before end of voyage is entitled to full indemnity, which may be measured by the wage.

A seaman, discharged without justifiable cause before termination of the voyage, is entitled to full indemnity, which may be measured by the stipulated wages for the entire voyage, and the amount of expenses in returning to the port of discharge, deducting what he earned or reasonably could have earned in other employment during the term of his contract.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Suit in admiralty by Donald J. Adams against the steamship Steel Trader; the United States Steel Products Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 10 F.(2d) 248.

Jas. Hy. Bruns, of New Orleans, La. (Geo. Denegre, Victor Leovy, Henry H. Chaffe, and Harry McCall, all of New Orleans, La., on the brief), for appellants.

Eugene S. Hayford, of New Orleans, La., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. By duly signed shipping articles, dated New Orleans, La., November 29, 1921, the appellee was employed as an oiler on board the steamship Steel Trader "from the port of New Orleans to Piræus, Greece, and East Indian ports, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge and/or loading ports on the Atlantic or Gulf Coast in the United States, for a term not exceeding 12 calendar months"—his wages being at the rate of $80 per month. After the articles were signed the following provision, typewritten on a sheet of paper, was pasted on the foot of page 1 of the articles; a notation written in ink on that slip showing that appellee did not consent to that provision: "Should any changes in the scale of wages of crews employed on vessels whose owners are members of the American Steamship Owners' Association be made after the departure of this vessel, such scale of wages shall prevail on this vessel from date new scale is put into effect by the American Steamship Owners' Association."

[1] On December 12, 1921, at Port Arthur, Texas, to which place the vessel went on leaving New Orleans, the appellee was discharged without his consent because he would not agree to the last above-quoted provision. He was then paid wages at the contract rate for the time he had served and an extra month's wages of $80, and for the amount so paid he gave a receipt before a United States shipping commissioner, but did not sign any release of demands for wages. After the return of the vessel to the port of New Orleans on May 19, 1922, the appellee filed his libel, alleging that he was discharged in violation of said articles, against his will, and without just cause, and claiming that he was entitled to his wages up to and including the day of signing off after the vessel's return to New Orleans. The claim asserted was resisted on the ground that the appellee was discharged and paid off in accordance with

the provision of section 4527 of United States Revised Statutes (Comp. St. § 8318), which reads as follows:

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

By the decree appealed from the appellee was awarded the amount of his wages for the voyage, less a credit of $80 paid as above stated, with 6 per cent. interest from May 19, 1922. The only ground on which the decree is complained of is that under section 4527, R. S., the payment made satisfied all liability incurred by the wrongful discharge of the appellee. The appellee's rights under the contract evidenced by the shipping articles are governed by ordinary rules of contract, except as modified by statute. Unless a statute otherwise provides, on the wrongful discharge of an employee before the expiration of the time for which he was employed, he is entitled to compensation for the services already rendered, and also to such damages as he may sustain as a result of the wrongful discharge or breach of the contract.

To say the least, the language of the provision in question does not clearly manifest a purpose to give to the payment to a seaman wrongfully discharged within the time mentioned of the amount of any wages he may have earned, and in addition a sum equal to one month's wages, the effect of satisfying all liability incurred by wrongfully discharging him. That provision was originally enacted as section 4 of the Seamen's Act of June 7, 1872 (17 Stat. 262), the fundamental purpose of which was to afford protection to seamen in respect to their treatment and wages. Inter-Island Steam Navigation Co. v. Byrne, 239 U. S. 459, 36 S. Ct. 132, 60 L. Ed. 382.

The immediately preceding section of that act, before it was amended by the Act of December 21, 1898 (Comp. St. § 8317), read as follows: "In cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the loss or wreck of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period." This provision is explicit in limiting the time for which the seaman shall be entitled to wages; while R. S. § 4527, makes the amount therein prescribed payable to a seaman, on his discharge under the circumstances therein dealt with, "as if it were wages duly earned," without indicating that such payment has the effect of satisfying all liability to the seaman resulting from his wrongful discharge. The last-mentioned provision determines the amount to be paid, "as if it were wages duly earned," to the wrongfully discharged seaman in the presence of a duly authorized shipping commissioner. R. S. § 4549 (Comp. St. § 8338).

R. S. § 4552 (Comp. St. § 8341), determines the legal effects of a discharge before a shipping commissioner. The second paragraph of that section declares that it "shall operate as a mutual discharge and settlement of all demands for wages between the parties thereto, on account of wages, in respect of the past voyage or engagement." That language does not disclose a purpose to give to the payment of the prescribed amount in the presence of a shipping commissioner the effect of satisfying or extinguishing whatever right of action the seaman then may have against the ship or its owner.

The case of The W. L. White (D. C.) 25 F. 503, involved the question of the effect, on the right of a seaman hurt in the service of the ship to recover from the ship the expenses of his cure, of his discharge pursuant to the provision of the Dingley Act of June 26, 1884 (23 Stat. 53), that "whenever a seaman is discharged by a consular officer in consequence of any injury received in the service of the vessel, such consular officer shall require the payment by the master of one month's extra wages over and above the wages due at the time of the discharge." It was held that such discharge did not absolve the vessel from liability for the expenses of the seaman's medical treatment and cure for a hurt received prior to the discharge. The following was included in the opinion of Judge Addison Brown in that case:

"If a cause of action in favor of the seaman had already accrued for injuries received by violence, or cruel usage, or insufficient food, a discharge at the end of the voyage, or by a consul in a foreign port, would not affect his right of action. Several of the cases above cited are of that kind.

It is the same with his claim for the payment of the expenses of cure for a hurt received in the service of the ship prior to his discharge. The inchoate right of action has already accrued to the seaman, which is not affected by a discharge from further claim to wages. * * * There is nothing in the Act of June 26, 1884, intimating any intent to absolve the ship from her legal obligations to an injured or sick seaman, beyond, possibly, the wages to the end of the voyage that might otherwise have been recovered, instead of one month's extra pay after discharge. Section 4600, as amended by the same act, provides that the consular officer, in case of apprehension of a seaman deserting on account of 'unusual or cruel treatment, shall discharge him;' requiring payment of one month's extra pay. It is impossible to suppose that Congress intended that one month's wages should be taken as a satisfaction of whatever claim to damages might exist for any actual injuries inflicted by such cruelty, or as a bar to such a claim. The 'discharge' must be deemed to leave such claims unaffected. * * * If vessels could in this way relieve themselves from all charges for treatment of sick or wounded seamen, it would be an extreme hardship upon seamen, and would be liable to lead to abuses. The effect in this instance has been to deprive the seaman of the entire fruits of the voyage. An act like that of June 26, 1884, amending the prior law, and designed in part for the benefit of seamen, ought not to be construed to their prejudice any further than its language requires. As it does not expressly absolve the vessel from her liability previously incurred for the medical treatment and cure of the discharged seaman, it should not be construed as doing so any more than an ordinary discharge at the close of the voyage would do so, nor any more than it would bar a vested right of action for a tort."

The language of R. S. § 4527, is consistent with an intention to treat the amount required to be paid to the wrongfully discharged seaman as compensation for the service already rendered by him. Certainly that language falls far short of expressly absolving the vessel, on the payment of such amount, from her liability for damages for breaching the contract evidenced by the shipping articles. That provision determines what is payable to the wrongfully discharged seaman at the time of his discharge. Other provisions determine what is payable at the time of the discharge of a seaman on account of the unseaworthiness of the vessel, or when the vessel is sold in a foreign country, or on the complaint of a seaman in a foreign country based on alleged violations of his rights. Comp. St. §§ 8350, 8373, 8374. Shipping commissioners and consular officers are vested with authority to exact compliance with those provisions. Comp. St. §§ 8297, 8338, et seq.

[2, 3] In the absence of a seaman's consent, those officials are not vested with authority or jurisdiction to determine what is recoverable on accrued or inchoate causes of action in favor of the seaman against the ship or its owner, based on alleged torts or breaches of contract obligations. In the absence of a statute requiring a different result, after the entering upon the voyage provided for in the shipping articles the ship is pledged to the complete execution of the contract, and may be proceeded against for nonperformance, and if a seaman is discharged without justifiable cause before the termination of the voyage he is entitled to full indemnity, which may be measured by the stipulated wages for the entire voyage and the amount of expenses in returning to the port of discharge, deducting what he earned, or reasonably could have earned, in other employment during the period of his engagement. The Topgallant (D. C.) 84 F. 356; Waitshoair v. The Graigend (D. C.) 42 F. 175; The City of New Orleans (C. C.) 33 F. 683; The White Seal, 194 F. 402, 114 C. C. A. 364.

While in the cases of many discharges covered by R. S. § 4527, the amount thereby required to be paid to the seaman on his discharge would be sufficient to afford him full indemnity, it is apparent that in many other cases covered by that provision that amount would be greatly less than enough to indemnify the seaman for the loss resulting from the violation of his contract rights. The discharge which was in question in the last above cited case was not covered by R. S. § 4527, and no question as to the meaning or effect of that statute was considered in that case. The facts of that case, as disclosed by the report of it, show that, if that statute had been applicable, and the libelant therein had been an oiler engaged at wages of $80 a month for a voyage from Seattle to Fairbanks, Alaska, and return, and had been wrongfully discharged at Fairbanks 13 days after the date of the shipping articles (as happened to the appellee in the instant case), the wages then accrued and $80 in addition would have been substantially less than

enough to cover the cost of the seaman's transportation from Fairbanks to Seattle.

If the statute in question has the meaning attributed to it by counsel for the appellant it has the effect of making it possible to discharge a seaman engaged for a long voyage, without his consent and without fault on his part, at whatever place, other than a foreign port, where the ship may be before one month's wages are earned, without incurring any liability, except to pay any wages he may have earned and in addition a sum equal in amount to one month's wages, though what is so paid is greatly less than enough to indemnify the seaman for the loss resulting from the violation of his contract rights. During the early part of a long voyage a new crew might be obtained at such wages as to make it profitable, by paying one month's extra wages, to get rid of the entire crew previously engaged for the voyage. Plain language would be required to justify the imputation to Congress of an intention to permit seamen to be subjected to such treatment and to be deprived of adequate redress therefor.

Frequently it is impossible, at or about the time of the wrongful discharge of a seaman, to ascertain what financial loss will result to him therefrom. In great measure the result depends on what, if any, opportunities he has of getting other employment. It is reasonably to be expected that the seamen will suffer loss in consequence of such a discharge. The language of the provision in question, considered with reference to the situation dealt with, shows that the lawmakers intended thereby to require the payment, when the described wrongful discharge of a seaman is effected in the circumstances stated, of an amount ordinarily sufficient for his immediate needs; but an inference that such payment was intended to have the effect of satisfying all claims, accrued or inchoate, of the seaman against the ship or its owner, is one not required by that language, and is not in harmony with the fundamental purpose of the act, of which that provision was a part, to protect seamen and to safeguard rights they had prior to the enactment of that statute.

We conclude that the provision in question did not give to the payment made to the appellee the effect of destroying his right to full redress for the alleged wrong to him, and that the only ground on which the decree was complained of is not a tenable one.

That decree is affirmed.