## WATERS v. UNITED STATES.
### No. 12870.

United States Court of Appeals
Ninth Circuit.
Aug. 23, 1951.

L. Chas. Gay, San Francisco, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., San Francisco, Cal. (John H. Black, Edward R. Kay, San Francisco, Cal., of counsel), for appellee.

Before BONE, ORR and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellant, Sidney L. Waters, a seaman, brought this libel in admiralty seeking to recover maintenance owing by reason of disability from tuberculosis allegedly contracted while he was employed by the United States as chief engineer on the S. S. Benjamin Bonneville and the S. S. Arthur A. Penn. By an amendment to his libel appellant further asked that a release executed by him in October, 1945 be set aside.

The facts are these: Appellant after some twenty years ashore returned to sea during the war years. After one trip as

assistant engineer aboard a tanker he sailed aboard the Bonneville as chief engineer. The voyage lasted from February, 1944 until October of that year and included Australia, India and East Africa. Appellant's second voyage aboard the Arthur A. Penn commenced on December 13, 1944 and was completed on March 11, 1945.

Appellant testified that he found the assistant engineers aboard the Bonneville were incompetent and that he had to do their work as well as his own; that he had to spend a great deal of time in the engine room in extremely high temperatures and was called to the engine room at all hours, seldom getting a full night's sleep. He testified that he was subject to worry, lost his appetite and developed a cough. By the end of the voyage on the Bonneville he was very ill and left the ship at New Orleans. He proceeded to Los Angeles where he spent two weeks in bed and felt very much better. Thereafter he signed on as chief engineer of the Arthur A. Penn. Prior to sailing he was given a routine examination and x-rays of his chest were taken. Appellant was not informed of the results of these x-rays until he returned from the voyage of the Penn at which time his seaman's papers were taken from him and he was ordered to the hospital. It was there determined that appellant had pulmonary tuberculosis. Appellant testified that conditions aboard the Penn were much the same as on the Bonneville and that he was again overworked.

Appellant was hospitalized from March 12, 1945 until August 31, 1945. He was re-hospitalized on February 20, 1946 and discharged again on July 6, 1949. Appellant claims he is still disabled from doing work and still in need of treatment. On the basis of medical testimony the trial court found that as of May 8, 1950 appellant's condition was stationary and he has not been in need of further treatment.

In October, 1945 appellant went to the office of John H. Black, an attorney representing appellee and discussed his claim with a Mr. Frick, an attorney employed in that office. A settlement was reached between appellant and Mr. Frick in which appellant accepted a lump sum of $1,000 and signed a release of all claims. Appellant now attacks this release on the ground that it was inadequate, that the settlement was unfair and made without a full understanding of his rights and further that he was misled in making the release. The trial court found against appellant on this issue and concluded that the release was valid and of full force and effect. A final decree was entered dismissing the action.

■ The first question for determination is the validity of this release. What transpired between appellant and Mr. Frick during the negotiations is a matter of dispute. We must assume, however, that all conflicts in the evidence were resolved in favor of the prevailing party. Peterson v. Denevan, 8 Cir., 177 F.2d 411.

According to the testimony of Mr. Frick he first talked to appellant about his claim on October 25, 1945. He testified he questioned appellant about his employment, his illness, conditions on the vessel and everything that seemed pertinent to the situation. Based on the information given him by appellant Mr. Frick prepared a statement which appellant signed and acknowledged to be a true statement. That statement contained, among other matters, the following paragraph: "I have no complaint to make about the living conditions upon either the SS Benjamin Bonneville or the SS Arthur A. Penn. They were both standard liberty vessels and I occupied a room on each of them by myself."

Mr. Frick stated that this statement applied to working conditions as well as living conditions and that appellant had no complaint against the vessel in connection with his employment. During this first meeting Frick suggested that an abstract be obtained from the hospital so that the claim could be evaluated. He testified that he told appellant that on the basis of his statement, his opinion was that appellant had a claim for maintenance only. A second meeting took place the following day and a request for an abstract from clinical record was prepared.

The next visit was on November 1, 1945 the day the abstract from the hospital was

received. The abstract revealed that appellant's condition had been diagnosed as pulmonary tuberculosis of a moderately advanced stage. That after treatment he had been discharged to home care, his condition improved but "prognosis guarded—unfit for duty." Mr. Frick again told appellant his action was one for maintenance only and asked him what he was asking in settlement of it. Appellant stated $5,000. Mr. Frick discussed this with his superior Mr. Black who authorized a settlement in a lump sum of $1,000. Appellant decided to think it over stating that he would probably see a lawyer. Mr. Frick approved of that and suggested he bring his lawyer in and they would talk it over. On November 13 appellant returned and stated he would accept the $1,000. The release covering all claims was prepared and signed by appellant.

Mr. Frick on several occasions explained to appellant that he was entitled to receive maintenance for a reasonable time. He denied that he set any definite limit, but stated to appellant that the cases were conflicting on what constituted a reasonable time. He discussed with appellant the prevailing rate of maintenance which was $4.00 per day. He informed appellant that he was entitled at that time to all accrued maintenance and to receive future maintenance, week by week, until maximum benefits were paid or until his condition was stationary. He discussed with appellant the abstract from his medical reports pointing out that appellant's prognosis was uncertain and if he had any misgivings he should not settle but take his maintenance week by week.

██ Releases by seamen are carefully scrutinized by the courts. In the language of the Supreme Court, "the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding." Garrett v. Moore-McCormack, 317 U.S. 239, 63 S.Ct.

246, 252, 87 L.Ed. 239. This burden is not lessened because the seaman pleads the release and asks its cancellation. Harmon v. United States, 5 Cir., 59 F.2d 372.

It is apparent from the evidence that appellant was fully aware that his prognosis was uncertain and was adequately informed of his rights with respect to maintenance. There was no attempt here to coerce appellant into signing a release and were maintenance the only question presented we would face no problem in sustaining the validity of the release. Appellant, however, contends that he executed the release without a full understanding of his rights. This contention is based on the fact that Mr. Frick told appellant that his claim was for maintenance only when as a matter of fact the evidence shows that both vessels were unseaworthy and that appellee was negligent in not removing appellant from the Penn when his illness was revealed to appellee by the x-ray taken before the voyage. Therefore, appellant contends he was misled into signing a general release in the belief that his claim was for maintenance only.

█ It is the contention of appellee that as this action is one for maintenance any question of negligence is immaterial. Further, appellee contends that there is no proof of any unseaworthiness of the vessels or that the owner of the vessels was chargeable with negligence in respect to the x-ray. However, the release executed by appellant was a release of all claims and if appellant had a right of action based on negligence or unseaworthiness the burden was on appellee to show that he understandingly gave up those rights in exchange for the settlement. Compare United States v. Johnson, 9 Cir., 160 F.2d 789. Concededly, in a negligence action, appellant would have to establish negligence or unseaworthiness and establish that his condition was caused or aggravated as a result thereof. But he was entitled to know when he executed the release that the right to maintain such an action was open to him.

█ We turn now to a consideration of whether, at the time the settlement was

negotiated, there was any basis in the facts presented to Mr. Frick to establish the charge of unseaworthiness or negligence in regard to which appellant should have been informed. With respect to the claimed unseaworthiness (allegedly due to an incompetent crew) that point has been resolved against appellant on substantial evidence. Mr. Frick testified that he inquired of appellant regarding appellant's work aboard the vessels and appellant had no complaint to make regarding his employment. In addition there is appellant's statement that he had no complaint as to living conditions on either vessel, which statement, according to Mr. Frick, was understood to refer to working conditions as well.

We take a different view however, of the alleged negligence in leaving appellant aboard the Penn after his tubercular condition was known. The notarized statement signed by appellant on his first visit to the offices of Mr. Black contained a statement to the effect that prior to sailing on the Penn appellant was given a chest x-ray by the War Shipping Administration. That on his return (some three months later) the vessel was met by a Coast Guard representative who took appellant's license and informed him that the x-ray showed a spot on his lungs. This matter was not touched on in Mr. Frick's direct examination. However, on cross examination the following occurred:

"Mr. Gay: Q. And you knew at the time of the settlement that the government, knowing that Mr. Waters was suffering from tuberculosis, nevertheless permitted him to make a three-months' trip on the 'Penn', did you not?

"Mr. Kay: Just a moment. Object to that as incompetent, irrelevant, and immaterial, outside the issues of the case.

"The Court: Overruled.

"A. I don't recall whether I knew at that time or not. My impression was it had been detected after he had [s]ailed, 1 think. I am not sure.

"Mr. Gay: Q. Well, x-rays had to be taken before he sailed didn't they? A. Yes, I say my impression is that the x-rays

had been read after he sailed. I am not sure on that, whether they caught the thing before he left or not.

"Q. And you are also aware that the vessel on its outward voyage stopped at Honolulu, only a six day voyage from San Francisco, where he could have been taken off then, didn't you? A. I don't know that. If the log indicates it did, I guess it did. I have no independent knowledge at this time."

At an earlier point in this cross examination Mr. Frick had testified as follows:

"Q. You didn't try to elicit any facts which would show negligence on the part of the company, did you? A. Well, I didn't try to work up a claim on his behalf against my company. I was getting information from him, Mr. Gay, as to what he told me about it."

Appellant was without benefit of counsel during the negotiations with Mr. Frick. Mr. Frick being apprised of the contents of the statement informed appellant that in his opinion he had a claim for maintenance only. There is no evidence that Mr. Frick inquired further of appellant or of any one else concerning this delay. His testimony on cross-examination would seem to indicate that he was not interested in inquiring any further into this delay other than what appellant had told him.

Seamen's contracts are analogous to those involving fiduciaries and beneficiaries. Garrett v. Moore-McCormack Co., supra. Harden v. Gordon, Fed.Cas.No. 6047. A claims' attorney negotiating with a seaman who is without counsel has an obligation to inform the seaman what rights he is giving up in executing a release. United States v. Johnson, supra. It is clear that appellant understood he was releasing all rights but it is not clear that he understood what those rights were.

We think that a competent attorney acting on appellant's behalf would have inquired further into the delay in bringing the x-ray to appellant's attention, and would have informed him that (if his illness was contracted while in the service of the vessel) he would have a right to maintenance and in addition an action for dam-

ages if he could prove negligence on the part of the United States. There is no showing in the evidence that such a right was brought to appellant's attention or discussed at all during the negotiations. On the contrary appellant was informed his claim was for maintenance only. Mr. Frick did not explain why he apparently gave no weight to the delay in informing appellant of the results of the x-ray except to say that it was his impression that the ship sailed before the x-ray was reviewed. We regard that as immaterial. It is not uncommon for vessels to deviate from their course to remove ill or injured seamen or to contact a passing vessel for that purpose. This factor does not so clearly negate a cause of action for negligence as to make it unnecessary to inform appellant of his possible rights in this respect. The burden was on appellee to establish that appellant was aware of his rights and it has failed to meet that burden.

This court in United States v. Johnson, supra, held invalid a seaman's release on several grounds among them the failure of a claims' attorney to inform the seaman of a possible action for damages arising from negligence. Cf. Bay State Dredging Co. v. Porter, 1 Cir., 153 F.2d 827.

We recognize that the instant case is not a duplicate of United States v. Johnson, supra. There the right to maintenance was already established while in this case even that was uncertain at the time of the negotiations. But we think the principle is the same and appellant was entitled to know all his rights, unfavorable as well as favorable, so that he might make an intelligent choice. We are aware that seamen's releases though scrutinized with care are not entirely without legal effect. To so consider them would be an injustice to the seamen as well as to employers. Bonici v. Standard Oil Co., 2 Cir., 103 F.2d 437. However, on the record before us we are of the view that appellee failed to meet the burden imposed upon it by law and the release must be held to be invalid. The judgment is reversed and remanded to the district court for proceedings not inconsistent with this opinion.