TERRENCE D. O'CONNOR, Plaintiff, *v.* PANAMA CANAL COMPANY, Defendant.

Muncipal Court of the City of New York, Borough of Manhattan, July 28, 1952.

*William L. Standard* and *Malcolm B. Rosow* for plaintiff.

*Thomas J. Maginnis* and *Arthur P. Loughran* for defendant.

STARKE, J. This is an action by a seaman to recover unearned wages in the sum of $164.51 for the period commencing with the date of illness until the date he obtained other employment. (The plaintiff was paid for maintenance and cure during that period.)

There are two main issues:

(1) Is a seaman entitled to unearned wages when, after signing shipping articles for a foreign voyage for an agreed period of time, he works for two days while the ship is in port and then leaves the vessel and signs off due to illness (without willful misbehavior or misconduct) prior to the vessel's departure from the port?

(2) Does the execution of a mutual release (due to illness) preclude recovery of unearned wages for that part of the voyage he did not make, until the time he gained other employment, for which period he received maintenance and cure?

As to question No. 1, while there is no New York law on this particular subject, the United States cases are plentiful. An analysis of all the authorities will reveal the following:

When a seaman becomes ill or is injured while a member of a crew, his right to *unearned* wages as well as maintenance and cure is an incident of his contract of employment. His right thereto and the shipowner's obligation are created upon the signing of the shipping articles and are based on the fact that the illness occurred while the seaman was " in the service of his ship." The controlling factor is the signing of the articles, and the vessel's departure from its home port is of no legal significance.

The commencement of the *voyage* is not the test. The test is, " when was the *employment* commenced? " If there is a contract of employment (shipping articles) for an agreed period of time, the signing of the shipping articles commences the employment, not the time the ship leaves the pier.

To recover unearned wages, a seaman need only show (a) his engagement as a seaman (the shipping articles), (b) his illness or injury, and that it occurred, was aggravated or manifested itself while in the ship's service, (c) the wages to which he may be entitled to the end of the voyage, or so long as the voyage continues, or until he secures other employment, or is well and able to find suitable employment. Willful misconduct or misbehavior must be pleaded by the vessel. (2 Norris on The Law of Seamen, §§ 554, 555; *Farrell* v. *United States,* 336 U. S. 511; *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724; *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525; *Bay State Dredging & Contr. Co.* v.

*Porter,* 153 F. 2d 827; *Seville* v. *United States,* 163 F. 2d 296; *Miller* v. *Lykes Bros.-Ripley S. S. Co.,* 98 F. 2d 185; *Biesemeyer* v. *United States,* 90 F. Supp. 382; *The Osceola,* 189 U. S. 158; *The Bouker No. 2,* 241 F. 831; *Warren* v. *United States,* 340 U. S. 523.)

A seaman has a cause of action for unearned wages and maintenance and cure *ex contractu* by reason of the obligations imposed on the shipowner by the shipping articles. (*Jones* v. *Waterman S. S. Corp.,* 155 F. 2d 992, 995.) The shipping articles constitute the contract of employment between the master and the seaman. (*The Seatrain New Orleans,* 127 F. 2d 879.) The term of employment is determined by the shipping articles. (*Ziegler* v. *Marine Transport Lines,* 78 F. Supp. 216.) The ship's obligation for unearned wages commences from the time the seaman is employed or accepted as an employee. (*Miller* v. *Browning S. S. Co.,* 165 F. 2d 209.) By signing the articles, the seaman binds himself to the service of the ship from the time he signs the articles. (*Farrell* v. *United States, supra.*) It is possible for a seaman to be logged as a deserter without having sailed on a ship. Once he has signed shipping articles, a seaman cannot obligate himself to service on another ship because he has already bound himself from the moment he signed the shipping articles on the first ship, and he can thus incur penalties of desertion. (*Tucker* v. *Alexandroff,* 183 U. S. 424; *Matter of Sutherland,* 53 F. 551; U. S. Code, tit. 46, § 576.) Regarding the term of employment, the court said, in *Enochasson* v. *Freeport Sulphur Co.* (7 F. 2d 674, 675): " These principles are that a seaman is to an extent bound to his ship in a kind of personal indenture, and the ship is in return bound to him for his wages, his maintenance, and his cure. That the obligations of this indenture are mutual, and continue through the term of the employment ".

In the leading case of *Aguilar* v. *Standard Oil Co.* (*supra,* p. 726) Mr. Justice RUTLEDGE, in delivering the opinion of the court, said: " All admit the shipowner is liable [for wages, maintenance and cure] if the injury occurs while the seaman is ' *in the service of the ship* '. * * * the *whole* period of service [is] covered by the seaman's articles; and, if he is injured *during this time,* the right [to wages and maintenance and cure] is made out, unless it is shown by way of defense he has forfeited it by misconduct causing the injury." (Italics and words in brackets supplied.)

And on page 730, he said: " In the United States this obligation has been recognized consistently as an *implied* provision in contracts of marine employment. *Created* thus *with the contract* of employment, the liability, unlike that for indemnity or that later created by the Jones Act, in no sense is predicated on the fault or negligence of the shipowner." (Italics supplied.)

" In the service of the ship " is closely analogous to the phrase " in the line of duty." (*Collins* v. *Dollar S. S. Lines,* 23 F. Supp. 395.) A seaman must be deemed " in the service of the ship " while under the power and authority of its officers. (*Ringgold* v. *Crocker,* Fed. Cas. No. 11843, pp. 813, 814.) " Service of the ship ", within the meaning of the rule that a shipowner is liable in case a seaman falls sick or is injured in the service of the ship, to the extent of his maintenance and cure, and to his wages, includes injuries received off the ship, and is not limited to acts done for the benefit of the ship, or in the actual performance of the seaman's duty on board. (*Jones* v. *Waterman S. S. Corp.,* 130 F. 2d 797, 799.)

The vessel's departure from its home port is of no legal significance. The date specified in the shipping articles for reporting for duty is what governs, according to the Shipowner's Liability Convention, proclaimed by the President, September 29, 1939 (54 U. S. Stat. 1693). Article 2 thereof provides: " 1. The shipowner shall be liable in respect of — (a) sickness and injury occurring between the date specified in the articles of agreement for *reporting for duty* and the termination of agreement ". (Italics supplied.)

The case of *Smith* v. *United States* (167 F. 2d 550 [1948]) is exactly in point with the case at bar on the question of the " commencement of the voyage ". The seaman signed shipping articles on February 16, 1944, for a foreign voyage. On February 19, *before departure* of the vessel and while the ship was docked, the seaman had gone ashore and had broken his ankle while walking. He was at that time preparing to return to the ship. The Circuit Court of Appeals, Fourth Circuit, reversed the District Court, saying on page 551: " Argument is made that relief should be denied because libellant [seaman] was *not actually on* a foreign *voyage* but *in the home port* of the vessel, was not engaged in the ship's business, and, although on shore leave, was not within the immediate vicinity of the ship at the time of his injury. *None of these matters,* in our opinion, *is ground for denying relief.*" (Italics supplied.)

The following cases are further authority that the *signing* of the shipping articles is the controlling factor for the recovery of unearned wages. *The Betsy Ross* (145 F. 2d 688 [C. C. A. 9th, 1944]); *Mason* v. *Evanisevich* (131 F. 2d 858 [C. C. A. 9th, 1942]); *Sperbeck* v. *Burbank & Co.* (88 F. Supp. 623); *The Vestris* (252 F. 201); *The Cliftwood* (280 F. 726, 727); *Witt* v. *United States* (82 F. Supp. 696).

In the case of *The Betsy Ross* (*supra*) decided by the Circuit Court of Appeals, Ninth Circuit, the seaman was injured off ship on the second day of his employment while the ship was still *at anchor.* He received his injuries when he went to the warehouse to procure a fishing net for the vessel for her forthcoming fishing venture. The court held the shipowner liable for wages, maintenance and cure on the ground that the injuries were received in the *course of the employment,* citing *The Osceola* (*supra*); *Cortes* v. *Baltimore Insular Line* (287 U. S. 367); *O'Donnell* v. *Great Lakes Co.* (318 U. S. 36) and 1 Benedict on Admiralty [6th ed.], 61. (See, also, *The Iroquois,* 194 U. S. 240, and *Calmar S. S. Corp.* v. *Taylor, supra.*)

In the case of *Mason* v. *Evanisevich* (*supra*) the same court held that where a member of a crew of a fishing vessel was employed for the entire sardine season and was injured on the day the vessel was being prepared for season, and *before it had left port,* he was entitled to (unearned wages) a share of the entire season's catch on the ground that he was injured *during his employment.*

In *Sperbeck* v. *Burbank & Co.* (*supra*) it was held that the fact the ship was *docked* and temporarily idle, awaiting repairs, when seaman was injured, does not disqualify him from claiming maintenance and cure. (1 Benedict on Admiralty [6th ed.], 253.) And said Judge RIFKIND, " The action for maintenance and cure includes as one of its elements a claim for wages to the end of the seaman's contract." (P. 626.)

The cases in which the courts have denied recovery for unearned wages are those wherein the illness or injury occurred while seamen were working on port time, *prior to the signing of shipping articles.* (*The Cliftwood, supra; Witt* v. *United States, supra.*)

With respect to Question No. 2, seamen's releases are subject to rigid scrutiny by the courts. No other branch of the law of seamen emphasizes that protective care and custody which courts of admiralty traditionally grant to seamen in those matters pertaining to releases given by them. Seamen

emphatically are " the wards of the admiralty " and as such are the recipients of a degree of solicitous care perhaps accorded no other class of workers. In *Garrett* v. *Moore-McCormack Co.* (317 U. S. 239, 246) the United States Supreme Court 119 years later quoted in part the memorable opinion of Justice STORY rendered in 1823 in the case of *Harden* v. *Gordon* (Fed. Cas. 6047, pp. 480, 485): " Every court should watch with jealousy an encroachment upon the rights of seamen * * * [Courts should accord them the same treatment as infants, wards or *cestuis que trustent*] " .

" The mere fact that a release was signed before a Shipping Commissioner — the release consists of the seaman signing his name in a column headed ' Release ' followed by some finely printed verbiage — no longer in and of itself bars a seaman's just claim." (1 Norris on The Law of Seamen, § 516; *Brown* v. *United States*, 283 F. 425; *Murphy* v. *American Mail Line*, 62 F. Supp. 97; *Billings* v. *Bausback*, 200 F. 523.)

A review of all the authorities reveals that the shipowner has the burden of showing all of the following:

That the seaman signed the release

(1) with full understanding of his rights, namely, that he was giving up his right to unearned wages after being informed of that right,

(2) for a fair and adequate consideration,

(3) with benefit of counsel, or after being informed that he had a right to be represented by counsel,

(4) with adequate knowledge of his physical condition. (*Muruaga* v. *United States*, 172 F. 2d 318 [1949]; *Garrett* v. *Moore-McCormack Co., supra*; *Bay State Dredging & Contr. Co.* v. *Porter, supra*; *Hume* v. *Moore-McCormack Lines*, 121 F. 2d 336; *Waters* v. *United States*, 191 F. 2d 212.)

Moreover, only recently (December, 1951), the Appellate Term (1st Dept.) enlarged upon the element of " fair and adequate consideration " for a seaman's release, by saying, in the case of *Prokl* v. *National Bulk Carriers* (110 N. Y. S. 2d 265, 266): " The release in the case at bar was not signed as the *result of a compromise*. Plaintiff was compelled to sign the release in order to get what was *concededly due him*." (Italics supplied.)

The court further quoted Judge CARDOZO, who said in *Cox* v. *Lykes Bros.* (237 N. Y. 376, 382): "A different question would be here if his right to wages were shown to have been the subject of *reasonable controversy*. * * * Release of the whole,

when the right is uncontested, is not a fair condition of payment of a part. There was room, indeed, for misunderstanding whether wages of both kinds were within the terms of the release though it were allowed to stand as written. * * * The abandonment of the statutory wages did not emerge from the transaction as the product of treaty and discussion in return for the concession of a payment withheld on reasonable grounds. We conclude the release does not constitute a bar.'' (Italics supplied.)

It is significant to note that the release in the *Cox* case contained words to the effect that the seaman was surrendering statutory wages, whereas in the case at bar the release did not even contain words about giving up rights to unearned wages. So that, it cannot be said that the seaman, in the instant case, was put on notice or had any intimation or knowledge that the question of unearned wages was even involved at the time he signed the release.

Releases have been held not to be a bar to recovery where the seaman is '' not represented by counsel and unfamiliar with his [legal] rights,'' (*Proctor* v. *Sword Line,* 83 N. Y. S. 2d 288, 294; *Stanley* v. *Weyerhaeuser S. S. Co.,* 1947 A. M. C. 411) ; where seaman '' had no independent legal advice,'' (*United States* v. *Johnson,* 160 F. 2d 789, 796 [1947]) ; where shipowner failed to show that the release was fully comprehended by the seaman after a full disclosure to him of his legal rights (*Mavromatis* v. *United Greek Shipowners Corp.* (179 F. 2d 310) ; where the seaman received what in law was due him, the shipowner must be prepared to take the burden of showing that the release was fairly made and fully comprehended by the seaman (*Harmon* v. *United States,* 59 F. 2d 372, 373). If the seaman acts alone, without benefit or guidance of counsel, the courts will inquire whether he has the intelligence to *understand* the *situation* and the *risk* he takes in *giving up his rights.* If he acts under advice, further investigation will be made to ascertain whether that advice was disinterested. (*Sitchon* v. *American Export Lines,* 113 F. 2d 830.)

In the case at bar, the plaintiff signed off the articles — '' Mutual Consent — Illness, No Discharge Issued.'' At the same time, he signed his signature to the articles, on the same line, under the word '' Release '', and he received his *earned* wages (two days' pay) to which he was lawfully entitled and which was concededly due him. The signing was necessary to collect his earned wages under section 644 of title 46 of the

United States Code. The signing of the mutual release also prevents the seaman from being logged as a deserter. (*Richards v. The Topgallant,* 84 F. 356; *The Amazon,* 144 F. 153; *Glandzis v. Callinicos,* 140 F. 2d 111.)

The shipowner has failed to sustain the required burden of showing that the plaintiff was informed of or knew he was surrendering his right to unearned wages, that the plaintiff fully comprehended the situation and understood the risk of giving up his rights, that he had the benefit or guidance of counsel, that he had adequate knowledge of his physical condition, that the consideration was fair and adequate and the result of a compromise of a reasonable controversy and not just to get something that was concededly due the seaman.

Furthermore, the master of the ship did not give the plaintiff a certificate of discharge, as required by statute. The articles were marked — " No Discharge ". Therefore, the plaintiff's rights under the contract of employment continued until he procured new employment (Feb. 4, 1949). (*Pacific Mail S. S. Co.* v. *Lucas,* 258 U. S. 266; *Enochasson* v. *Freeport Sulphur Co., supra; Wahler* v. *Alaska S. S. Co.,* 91 F. Supp. 261.) The cases also show that even if the plaintiff had been discharged by the captain or master, where the discharge is due to illness, the release would not have been effective. In *Enochasson* v. *Freeport Sulphur Co.* (7 F. 2d 674, 675, *supra*) where the seaman was paid his wages by the master in the presence of the United States Consul, and the consular office certified that the seaman had been discharged because of illness, the court said: " Libelant [seaman] was not discharged as contemplated in the contract, but was compelled to leave his post through illness which incapacitated him without any fault on his part. Under such circumstances, a discharge would be wholly ineffective to release the ship or its owners. Halvorsen v. United States (D. C.) 284 F. 285; Great Lakes v. Geiger (C. C. A.) 261 F. 276."

In the case of *Wahler* v. *Alaska S. S. Co.* (*supra*) the seaman was entitled to recover maintenance and cure notwithstanding signing off and signing a mutual release because of illness, and he would have been entitled to the unearned wages as well except that he immediately obtained other employment on another vessel.

This court therefore holds that where a seaman, after signing shipping articles (for a foreign voyage for an agreed period of time) and commences his duties thereunder (by working two days), takes ill (without willful misbehavior or misconduct) prior to the vessel's departure from the port, his signing off and

his execution of a mutual release does not preclude him from recovering unearned wages to the end of the voyage, or sooner, where he is able to secure suitable employment.

The amount of $164.51 having been stipulated as the correct amount in the event of recovery by the plaintiff, the court hereby finds and adjudges that the plaintiff is entitled to judgment against the defendant in the sum of $164.51 and hereby renders judgment in favor of the plaintiff accordingly. Fifteen days' stay of execution.