Mangan v. Shafmaster                    CV-95-571-JD  01/06/97

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Thomas Mangan

        v.                              Civil No. 95-571-JD

Jonathan S. Shafmaster, et al.


                            O R D E R


     The plaintiff, Thomas Mangan, brought this action against

the defendants, Jonathan S. Shafmaster and Jonathan S. Shafmaster

d/b/a Shafmaster Fishing Co. ("Shafmaster Fishing"), seeking

damages arising out of an injury the plaintiff suffered during

the course of his employment on a fishing vessel owned and

operated by the defendants.  Before the court is the motion for

summary judgment of defendant Shafmaster Fishing (document no.

13).


                          Background[1]

     On March 24, 1994, while employed as a deckhand on the F/V

CLAUDIA NICOLE, the plaintiff tripped over a deck hose and broke

his right foot.  The accident occurred while the boat was in

navigable waters.

_____

     [1]The facts relevant to the instant motion either are not in
dispute or have been alleged by the plaintiff.

The plaintiff was treated by Dr. Gary Kish of Orthopaedic Associates of Portsmouth, New Hampshire, between April 1, 1994, and June 27, 1994. At some point prior to July 13, 1994, the plaintiff received payments for maintenance of ten dollars per day from March 29 through June 27, 1994 ($910.00), for cure of $6,160.85, and for one-third of the lost share of the catch on those trips he missed during his recovery period ($715.29) -- a total of $7,784.14.

On June 27, 1994, after a screw had been surgically inserted into his foot, the plaintiff was judged fit for "full duty" by Dr. Kish. Early in July, the plaintiff met with Richard Hiscock, a loss adjuster employed by Shafmaster Fishing. On July 13, 1994, the plaintiff met with Donna Peters, Shafmaster Fishing's office manager, who told him that in order to return to work he would have to sign a document prepared by Hiscock. Without counsel present, and in the presence of Donna Peters and three witnesses, the plaintiff signed the document, which purports to release Jonathan Shafmaster and Shafmaster Fishing of every claim arising from the plaintiff's March 24, 1994, injury.

At the top of the document in large, bold capital letters appears the phrase "THIS IS A GENERAL RELEASE." The phrase "THIS IS A RELEASE" appears at the bottom of the document, in slightly larger bold capital lettering. The document calls for the signer

2

to place his signature on the letters of the phrase "THIS IS A RELEASE" at the bottom of the page.

The first paragraph of the document states in bold lettering:

> WARNING -- READ CAREFULLY every word printed or written on both sides of this paper.  By signing this paper YOU AGREE to give up every right against all the parties and vessels mentioned in this paper which you ever had, you now have, or you may in the future have because of any matter or anything which ever happened from the beginning of the world up to the time you sign this paper.

The second paragraph contains words and a series of spaces filled in either by the defendants (typed) or the plaintiff (handwritten).  The plaintiff's additions are underlined.

> I, Thomas A Mangan - Born YOOL 2 Dec. 1972 age 21 age 21 Married or single single  Address 231 High Street in exchange for the sum of Eight thousand, five hundred, one Dollars and forty-three Cents ($8,501.43) lawful money of the United States of America which I have received, do hereby release and forever discharge F/V CLAUDIA NICOLE (D.N. 624270); Jonathan S. Shafmaster; SHAFMASTER FISHING; Commercial Union Insurance Companies; and, ERE Associates Ltd. heirs, executors, administrators, successors and assigns, and all his or their vessels and in particular the F/V CLAUDIA NICOLE (D.N. 624270[)]; Jonathan S. Shafmaster; SHAFMASTER FISHING; Commercial Union Insurance Companies; and ERE Associates Ltd. and the owners, operators, underwriters[,] agents, charterers, masters, officers, and crews, of said vessels of each and every right or claim which I now have, or may hereafter have, because of any matter or thing which happened before the signing of this paper:  and particularly, but not only because of an injury to my right foot that occurred while working on board F/V CLAUDIA NICOLE (D.N. 624270) on or about 24 March 1994.

The phrase "THIS IS A RELEASE" appears in capital letters

3

beneath this paragraph, followed by the following paragraphs:

> I know that in signing this release I am taking the risk that I may have other injuries, illnesses or disabilities that I do not now know of from the particular occurrence described above of [sic] from some other occurrence before the signing of this paper. I also know that I am taking the risk that the injuries, illnesses or disabilities I do know of may be or may turn out to be worse that they now seem to me or to the doctors I have seen. I take all these risks. I know I am giving up the right to any further money. I am satisfied.

> I understand and agree that the money paid to me now is received by me in full settlement and satisfaction of all claims and demands whatsoever.

The next section contains a series of questions and blank lines in which the plaintiff wrote his answers. The plaintiff's answers are underlined.

> 1.   Have you read this paper?  A. <u>Yes</u>
> 2.   Has this paper been read to you?  A. <u>No</u>
> 3.   Do you know what this paper is that you are signing?  A. <u>Yes</u>
> 4.   What is this paper which you are signing?  A. <u>Release</u>
> 5.   Do you know that signing this paper settles and ends EVERY RIGHT AND CLAIM YOU HAVE FOR DAMAGES AS WELL AS FOR PAST, PRESENT, AND FUTURE MAINTENANCE, CURE AND WAGES?  A. <u>Yes</u>

The final paragraphs provide, again with the plaintiff's answers underlined:

> THEREFORE, I am signing my name near the seal to show that I understand and mean everything that is written by or for me on this paper.

> I am signing this of my own free will.  <u>Thomas A. Mangan 13 July</u> 1994

4

Although Peters informed the plaintiff that he had to sign the document if he wanted to return to work, she acknowledged during deposition testimony that she never explained to the plaintiff his legal rights under the Jones Act, never asked whether he understood the nature and severity of his injuries, and never advised him as to what rights he was waiving in exchange for signing the release. Hiscock similarly acknowledged during deposition testimony that he never advised the plaintiff of his rights under the Jones Act, never informed the plaintiff that he might have a right to recover for his pain and suffering, never asked the plaintiff if he understood the nature and severity of his injury, and never advised him of what rights he would be waiving if he signed a release. The plaintiff also has attested that he was not informed of his right to consult with an attorney prior to signing the document.

Upon signing the document, the plaintiff was paid $715.29 (an additional one-third of his lost shares) in settlement of his claims and was fired immediately thereafter. On November 27, 1995, the plaintiff filed this suit, alleging negligence under the Jones Act and unseaworthiness under general maritime law, for which he is seeking to be compensated.

Discussion

Shafmaster Fishing argues that summary judgment is warranted because the release that the plaintiff signed bars recovery for the claims currently before the court. The plaintiff contends that the release is ineffective because he was not advised of his rights under the Jones Act or under general maritime law, of the nature and seriousness of his injury, or of his right to seek the advice of an attorney. The plaintiff further claims that the release is not valid because he was coerced into signing it and the consideration offered was inadequate.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); McKinley v. Afram Lines (USA) Co., 834 F. Supp. 510, 514 (D. Mass. 1993) (applying

6

summary judgment in a case under court's admiralty jurisdiction). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992). However, once a defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

Courts of admiralty protect seamen in their dealings with shipowners as courts of equity protect wards in their relationships with guardians. The solicitude with which admiralty law has viewed seamen's contracts was described by Justice Story in 1823:

> If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side which are not compensated by extraordinary

7

benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable. . . . And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of seamen.

Harden v. Gordon, 11 F. Cas. 480, 485 (C.C.D. Me. 1823) (No. 6047).

In Garrett v. Moore-McCormack Co., 317 U.S. 239 (1942), the Supreme Court articulated the standard under which courts are to assess the validity of a contract in which a seaman releases his rights against a shipowner:

[T]he burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

Id. at 248. Cases decided after Garrett illustrate that in order to establish the validity of a release, a shipowner must not only demonstrate that the seaman knew he was releasing all of his rights, but also that he knew the nature of the rights he was releasing. See Waters v. United States, 191 F.2d 212, 215 (9th Cir. 1951). In particular, the seaman must be aware of his rights of action based on negligence, unseaworthiness, and

8

maintenance and cure.  See id. at 214; Bay State Dredging & Contracting Co. v. Porter, 153 F.2d 827, 833 (1st Cir. 1946).  In addition, the severity of the injury should be discussed as a means of ensuring that the settlement is adequate compensation for the injury sustained.  See Davis v. American Commercial Lines, Inc., 823 F.2d 1006, 1008 (6th Cir. 1987) (denying shipowner's motion for summary judgment based on release where discussion between plaintiff and shipowner's attorney "carefully avoided" issue of adequacy of settlement amount), cert. denied, 484 U.S. 1067 (1988).  Finally, the shipowner must demonstrate that the plaintiff entered into the agreement without being coerced.  See Castillo v. Spiliada Maritime Corp., 937 F.2d 240, 246 (5th Cir. 1991) (invalidating release where, inter alia, employer threatened to blacklist employees if they refused to sign release).

Given the heavy burden that a shipowner carries under Garrett, several courts have noted that summary judgment may be an inappropriate mechanism for establishing the validity of a seaman's release.  See Halliburton v. Ocean Drilling & Explor. Co., 620 F.2d 444, 445 (5th Cir. 1980) (shipowner has particularly heavy burden on summary judgment because he must conclusively demonstrate that the seaman signed the release with a full understanding of his rights and the effects of his

action); <u>Sagastume v. Lampis Navig. Ltd.</u>, 579 F.2d 222, 224 (2d Cir. 1978) (summary judgment inappropriate where the validity of a seaman's release is at issue).

Here, Shafmaster Fishing has not met its burden of demonstrating the lack of a genuine issue of material fact concerning the validity of the release. The release itself does not articulate the rights it purports to waive or mention the seriousness of the plaintiff's injury, and Shafmaster Fishing has offered no evidence suggesting that the plaintiff fully understood his rights or of the extent of his injury. In fact, Shafmaster Fishing's agents admitted during deposition testimony that they did not discuss any of this information with the plaintiff before he signed the release. Moreover, the plaintiff has attested that he was told he had to sign the release before returning to his job and claims that he was fired immediately after he signed the document. It is therefore evident from the record that there are genuine issues of material fact related to the adequacy of consideration offered, the plaintiff's understanding of his rights and his injury when he signed the release, and the plaintiff's freedom from coercion in signing the document. Summary judgment is not warranted.

<u>Conclusion</u>

10

Shafmaster Fishing's motion for summary judgment (document no. 13) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

January 6, 1997

cc:   David J. Berg, Esquire
      Ellen F. McCauley, Esquire
      Lauren Motola-Davis, Esquire

11