Edward CONNOLLY, Plaintiff, Appellant,

v.

FARRELL LINES, INC., Defendant, Appellee.

No. 5486.

United States Court of Appeals
First Circuit.

Heard May 12, 1959.

Decided July 6, 1959.

654

Nathan Greenberg, Boston, Mass., for appellant.

Robert A. Lilly, New York City, with whom William J. O'Neill, Boston, Mass., and George W. Sullivan, New York City, were on brief for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the plaintiff from a judgment of the United States District Court for the District of Massachusetts entered on February 25, 1959 following directed verdicts for the defendant dismissing the plaintiff's action.

The plaintiff, Edward Connolly, a resident of Massachusetts, brought an action at law with a demand for a jury trial against his employer, Farrell Lines, Inc., a New York corporation, represented in Massachusetts by a general agent. The complaint was in three counts. The first count was for damages for personal injuries under the Jones Act, 41 Stat. 1007 (1920), 46 U.S.C.A. § 688, allegedly caused by the defendant, its agents or servants. The second count was brought under the general maritime law for unseaworthiness and the third count was for maintenance and cure.

Since a verdict was directed for the defendant following the presentation of the plaintiff's evidence, the facts set forth here reflect only that evidence.

The plaintiff, who had been a seaman for ten years, became a member of the crew of the defendant's cargo vessel, African Grove, in December 1956. On February 15, 1957 shortly after ten o'clock in the morning when the African Grove was at Monrovia, Liberia, the plaintiff, who was suffering from an ear infection, was taken ashore to visit a doctor for treatment. Following this treatment the doctor gave the plaintiff a ride back to the port area. The plaintiff testified that as he knew that he had missed lunch on the vessel, he had lunch at a cafe in the port area. He then went into a shack adjacent to the cafe which was used as a bar where he found a dice game in progress. Among the participants in this game were several members of the crew of the African Grove including Alexander Phillips, a galley utility man in the steward department. The plaintiff participated in the game by making a few bets and covering other bets. During the period of approximately two and a half hours after 12:30 p. m. the plaintiff admitted consuming seven small bottles of German beer. The plaintiff, after some complaints were made about the inability of a player to collect his winnings, accused Phillips of not paying his bets. Phillips denied this and after an exchange of words, Phillips charged across the room attacking the plaintiff with his fists. The plaintiff apparently got the better of this exchange and pinned Phillips to the floor. Phillips was then released and after throwing some chairs at the plaintiff, threatened to get a knife and cut the plaintiff's throat and also cut his heart out. Phillips left the bar and ran towards the kitchen. The plaintiff then went to the cafe and finding a small bottle, broke off the neck and put it in his right front pocket. When

the plaintiff was told by a group of bystanders that Phillips had returned to the ship, the plaintiff began to walk back to the bar and was about five steps or twenty feet from the door to the bar when Phillips appeared at the door. The plaintiff continued to approach Phillips who appeared to be unarmed. Then Phillips lunged at the plaintiff and struck him on the head with a three foot plank, two or three inches square, causing the injuries for which the plaintiff is suing the ship owner.

As the basis for recovery under his first count the plaintiff asserts that the defendant was negligent in not removing Phillips from the crew of the African Grove because of his dangerous propensities which were known or should have been known to the officers of the African Grove and that this negligence played a part in the plaintiff's injuries. As the sole evidence of Phillips' prior conduct which should have informed the defendant of Phillips' character, the plaintiff relies on the following entry in the log of the African Grove dated December 28, 1956: "Alexander Phillips, Utility, Z461502, was found unfit for duty due to being under the influence of alcohol. He was ordered to his room by the Chief Steward. He insisted on working. The Chief Steward called on the Chief Officer for his assistance, at which time Phillips went to his room, and his room was searched in his presence. No liquor was found there, but one of the ship's knives was found under his pillow." No further evidence whatsoever was introduced from which the jury could make any inferences as to the nature of or intended use of this ship's knife. Phillips was subsequently fined one day's wages for this offense and said it wouldn't happen again.

■ The primary issue presented by the first count is whether a jury could find that the defendant's failure to discharge or otherwise isolate Phillips from the rest of the crew was a failure to exercise the care which should have been exercised under those circumstances. Then if such conduct could be found to constitute negligence, the issue becomes whether a jury could with reason conclude that this negligence played any part, even the slightest, in producing the injuries for which the plaintiff seeks damages. See Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493. However, we do not have to deal with the second issue because from the evidence presented by the plaintiff, it could not be reasonably inferred that the defendant was negligent in not discharging Phillips because of his intoxication and the subsequent finding of a ship's knife under his pillow. There was no evidence that Phillips had been engaged in any fights or controversies prior to the incidents of February 15, 1957 either with Connolly or any other members of the crew or that he had ever threatened anyone with a knife or any other weapon prior to that date. There was no evidence that Phillips was an habitual violator of ship discipline except for the one occasion noted in the ship's log. We note that Phillips was punished with the loss of one day's wages for this infraction and he promised that it would not occur again. From the evidence presented by the plaintiff it cannot be said that the defendant was negligent in continuing to employ Phillips for there was no evidence that the defendant should have known Phillips was a source of peril to those who might sail with him, see Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132, or even that he was of a belligerent nature, see Nowery v. Smith, D.C.E.D.Pa.1946, 69 F. Supp. 755, affirmed 3 Cir., 1947, 161 F.2d 732.

■■ The second count was for unseaworthiness. In Boudoin v. Lykes Bros. S. S. Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, it was held that the warranty of seaworthiness extended to the personnel of the ship as well as to its gear. This warranty is said to require that a seaman should be equal in disposition and seamanship to the ordinary men in the calling. Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515. But this does not mean the shipowner is liable for injuries resulting

from every sailor's brawl. The line between such a brawl and an assault by a crew member "with a wicked disposition, a propensity to evil conduct, a savage and vicious nature", Boudoin, supra, at page 340 of 348 U.S., at page 385 of 75 S.Ct., is sometimes difficult to draw. The primary issue here is whether sufficient evidence was presented from which the jury could infer that Phillips, as Mr. Justice Douglas termed it in Boudoin, supra at 339, of 348 U.S., at page 385 of 75 S.Ct., had "a proclivity for assaulting people" and was consequently unequal in disposition to the ordinary seaman. In Jones v. Lykes Bros. Steamship Co., 2 Cir., 1953, 204 F.2d 815, the court implied that the assailant's savage disposition can be proven either by independent evidence of his quarrelsome nature or by the fact that a weapon was used by the assailant. In that case a jury verdict for the plaintiff was reversed because there was no evidence that the assailant was a man of unusual truculence even though the plaintiff was beaten by the assailant's fists and suffered a broken hip as a result of the fight. In the instant case the only independent evidence relating to Phillips' behavior was the log entry and this was properly found by the district judge to be insufficient for a jury to infer that Phillips possessed a savage disposition. See Stankiewicz v. United Fruit Steamship Corporation, 2 Cir., 1956, 229 F.2d 580. Similarly we do not think that the circumstances of this assault *per se* were such as to prove that Phillips was of a vicious nature. This was not a premeditated attack with an unmistakably deadly weapon such as a meat cleaver, cf. Thompson v. Coastal Oil Co., D.C.D.N.J. 1954, 119 F.Supp. 838, reversed 3 Cir.,

1955, 221 F.2d 559, reversed 1956, 352 U.S. 862, 77 S.Ct. 90, 1 L.Ed.2d 73, Keen v. Overseas Tankship Corp., 2 Cir., 1952 194 F.2d 515, or knife, cf. Boudoin v. Lykes Bros. S. S. Co., supra, Kelcey v. Tankers Company, 2 Cir., 1954, 217 F.2d 541, Handley v. United States, D.C.S.D. N.Y.1958, 157 F.Supp. 616. From the plaintiff's own testimony the assault occurred only after he had armed himself with a broken bottle and had advanced about twenty feet toward Phillips. Under these circumstances the district court was correct in holding that Phillips' actions thereafter were not of such vicious character as to reasonably support the inference that he was of so savage a nature as to be unfit for service as a seaman aboard the African Grove.

■ The district judge also directed a verdict. for the defendant on the third count for maintenance and cure. The basis for his action was that from the evidence presented by the plaintiff, the only reasonable inference was that the plaintiff's injuries were the result of his own wilful misconduct and were not incurred in the service of the ship. The issue presented to us is whether from this evidence the jury could reasonably conclude that the plaintiff's injuries were not caused by his own wilful misconduct.[1]

The district judge concluded that the plaintiff initiated the controversy by accusing Phillips of holding out on his bets in the dice game and that this constituted wilful misbehavior barring him from any rights to maintenance and cure. Even assuming this to be so, we cannot conclude that as a matter of law the plaintiff's conduct contained sufficient ele-

1. The plaintiff erroneously assumed that the recent decision in Romero v. International Term. Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, rehearing denied 359 U.S. 962, 79 S.Ct. 795, 3 L. Ed.2d 769, required the district judge to determine the factual issue without a jury and that therefore our review is limited to whether his finding of fact was clearly erroneous. But in the instant case the jurisdiction of the court was based on diversity of citizenship and the

district judge treated the maintenance and cure count as one for the jury if supported by sufficient evidence. See Keough v. Cefalo, 1953, 330 Mass. 57, 110 N.E.2d 919. Consequently, in reviewing the decision of the district court, the question before us is whether the plaintiff provided evidence from which the jury could find that his injuries were incurred as a result of service on the African Grove and not due to his own wilful misconduct.

ments of wilfulness so as to deprive him of his right to maintenance and cure. See Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503. Even his subsequent behavior in breaking off the neck of the bottle and advancing toward Phillips could be accepted as reasonable conduct under the circumstances by the jury if it believed the plaintiff's explanation that the bottle was for self defense only and that he was approaching Phillips in order to peacefully settle the controversy. This issue of fact should have been submitted to the jury for their determination and the case must be remanded for further proceedings on the plaintiff's third count.

 As a further ground for dismissing the plaintiff's action in its entirety, the district court held that there was improper venue under the Jones Act, 46 U.S.C.A. § 688. However, insofar as the district court has been upheld on its dismissal of the first two counts, the issue of venue directly arises only as to the plaintiff's third count for maintenance and cure.[2] Because this is a diversity action it is clear that there is venue of the third count under 28 U.S.C. § 1391 (a). Branic v. Wheeling Steel Corporation, 3 Cir., 1945, 152 F.2d 887.

A judgment will be entered affirming the judgment of the district court as to the first and second counts and remanding the case for further proceedings consistent with this opinion as to the third count; no costs on appeal.

---

2. In any event the district court was in error in dismissing the second count for lack of venue as the court's jurisdiction was based upon diversity of citizenship, 28 U.S.C. § 1391(a). Insofar as the first count under the Jones Act is concerned, the defendant while alleging that it was a New York corporation with no place of business in Massachusetts, admitted having a general agent in Massachusetts. The district court held it lacked venue because 46 U.S.C.A. § 688 holds that "jurisdiction * * * shall be under the court of the district in which the defendant employer resides or in which his principal office is located." However, 28 U.S.C. § 1391(c) states that

"a corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

We hold in accord with Phillips v. Pope & Talbot, Inc., D.C.S.D.N.Y.1952, 102 F. Supp. 51 and the cases cited therein that § 1391(c) defines the term "residence" in the Jones Act so that a corporation may be sued in the judicial district where it is doing business and therefore the district court was in error in dismissing the complaint on this ground. See also Hutchison v. Pacific-Atlantic Steamship Co., 9 Cir., 1954, 217 F.2d 384.