Kevin McKINLEY, Plaintiff,

v.

AFRAM LINES (USA) CO., LTD., Defendant.

Civ. A. No. 92–10372–H.

United States District Court, D. Massachusetts.

Sept. 24, 1993.

James W. Bagnell, Thomas J. Hunt, Hunt & White, Boston, MA, for plaintiff.

J. Christopher Callahan, Thomas J. Muzyka, Clinton & Muzyka, Boston, MA, for defendant.

GORTON, District Judge.

Report and Recommendation accepted and allowed.

### REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### (DOCKET ENTRY # 12)

BOWLER, United States Magistrate Judge.

On June 7, 1993, defendant Afram Lines (USA) Company, Ltd. ("defendant"), owner of the S.S. Tampa Bay on July 26, 1991 (Docket Entry # 1, ¶ 2; Docket Entry # 4, ¶ 2), filed a motion for summary judgment. (Docket Entry # 12). On June 18, 1993, plaintiff Kevin McKinley ("plaintiff"), a member of the crew of the S.S. Tampa Bay on July 26, 1991 (Docket Entry # 1, ¶ 3; Docket Entry # 4, ¶ 3), filed an opposition. (Docket Entry # 14).

On July 7, 1993, this court held a hearing and took the motion (Docket Entry # 12) under advisement.

## BACKGROUND

This action arises out of personal injuries incurred by plaintiff during an altercation occurring on July 26, 1991, on board the S.S. Tampa Bay. Plaintiff's complaint asserts three causes of action against defendant.

Count I is grounded on defendant's negligence in failing to maintain a safe working environment and failing to use reasonable care in providing sufficient machinery, appliances, appurtenances and equipment aboard the vessel. In Count II plaintiff alleges that the S.S. Tampa Bay was unseaworthy and that such unseaworthiness resulted in his injuries. Plaintiff also brings a third count for maintenance and cure. (Docket Entry # 1).

Defendant seeks summary judgment on the basis that a crew member's isolated act of striking plaintiff is legally insufficient to support a claim for negligence or a claim of unseaworthiness.[1] (Docket Entry # 12). Plaintiff argues that the assailant was intoxicated at the time of the assault and that this conduct creates a responsibility on the part of the Captain to investigate the circumstances leading to the intoxication. Plaintiff further submits that the assailant's intoxicated condition and the vessel's policies towards dealing with intoxicated crew members create unresolved issues of fact which preclude summary judgment. (Docket Entry # 15).

Before detailing the record for purposes of summary judgment, it is necessary to determine the contents of the record. In his brief, plaintiff "does not argue with [d]efendant's statement of the case." (Docket Entry # 15). In addition, plaintiff's brief states that "defendant's statement of the facts are (sic) accurate up to the point where on page 5 paragraph 3 of Defendant's Memorandum, the defendant starts characterizing plaintiff's allegations."[2] (Docket Entry # 15).

Defendant's statement of the case and statement of the facts briefly summarizes the altercation and assumes a number of preliminary facts which are not before this court either in the form of prior pleadings, affidavits, answers to interrogatories or depositions. In support of summary judgment, defendant provides excerpts of plaintiff's deposition and also attaches copies of the complaint and answer. (Docket Entry # 13).

Rule 56(c) details the matters which this court can consider on a summary judgment motion. The rule states that summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.

In the event a complaint is verified, it is appropriate to consider factual averments based on personal knowledge therein as the equivalent of an affidavit for purposes of summary judgment. *Sheinkopf v. Stone*, 927 F.2d 1259, 1262–1263 (1st Cir.1991). An unverified complaint, however, primarily shows "the nature of the cause of action ... and the opposing party can take advantage of any admissions in it." *Ratner v. Young*, 465 F.Supp. 386, 389 & n. 5 (D.V.I.1979). A party may also move for summary judgment based solely on the pleadings in which case the court treats the motion as functionally equivalent to a Rule 12(b)(6) motion. *See* 6 James Wm. Moore, Walter J. Taggart & Jeremy C. Wicker *Moore's Federal Practice* ¶ 56.11[1.–1] (1993).

With respect to the case at bar, Rule 56(c) expressly permits the use of "admissions on file." The term admissions is not limited to admissions formally made pursuant to Rule 36, Fed.R.Civ.P. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (1983) ("admissions need not be pursuant to Rule 36" but may occur during pretrial conferences, oral argument on the motion, joint statements or stipulations);

---

1. Inasmuch as defendant does not address the maintenance and cure count, neither will this court. *See Paterson–Leitch v. Massachusetts Electric Company*, 840 F.2d 985, 990 (1st Cir. 1988). Accordingly, count three remains in this action at this time.

2. Neither party contests nor briefs the issue of whether this court can consider defendant's summary of the facts as constituting the record for purposes of summary judgment.

6 James Wm. Moore, Walter J. Taggart & Jeremy C. Wicker *Moore's Federal Practice* ¶ 56.11[1.–1] (1993) (admissions may be established by stipulation, statements by party during deposition, statements by counsel during oral or written argument or at pretrial conference). Rather, the term may encompass an admission made by counsel in a written brief submitted in opposition to the motion for summary judgment. *United States v. One Heckler–Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir.1980). As expressed by one commentator, "admissions in the brief of the party opposing the motion may be used in determining that there are no genuine issues as to any material fact, since they are functionally equivalent to 'admissions on file,' which are expressly mentioned in Rule 56(c)." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723 (1983). This is particularly true when the nonmoving party agrees on the facts as summarized by the moving party and neither party objects to this court's consideration of such facts on summary judgment. Accordingly, based on the pleadings, excerpts of depositions and admissions on file, this court finds the following facts.

In June 1991 plaintiff joined the crew of the S.S. Tampa Bay in Jacksonville, Florida as Chief Mate. The S.S. Tampa Bay proceeded from Florida on a voyage to Damman, Saudi Arabia without incident. After loading its cargo in Damman, the S.S. Tampa Bay began her return voyage to Bayonne, New Jersey. (Docket Entry ## 13 & 15).

Five to six days before the July 26, 1991 incident, Able Seaman Leiva ("Leiva"), a member of the crew, reported to plaintiff that Able Seaman Max Guiher ("Guiher"), a member of the crew, had threatened him. (Docket Entry ## 13 & 15). Plaintiff then met with Guiher who acknowledged that there had been some contact between him and Leiva. Plaintiff informed Guiher that he had heard "rumors that he was drinking on the ship and that [plaintiff] did not want to ever see [Guiher] drunk." (Docket Entry

# 13, Ex. F). Beyond this verbal warning, plaintiff did not take any further precautions to prevent Guiher from assaulting a crew member. Nor did plaintiff feel it was necessary at that time to take such further precautions. (Docket Entry # 13, Ex. G). Plaintiff also testified that an individual identified as "Mr. Ruffino" had told plaintiff that he had warned Guiher about drinking on the ship. (Docket Entry # 13, Ex. H).

Shortly after 5 a.m. on the morning of July 26, 1991, plaintiff received a telephone call from the Chief Steward. The Chief Steward apprised plaintiff "that Guiher was drunk and abusive in the crew's mess and had assaulted" another member of the crew, Able Seaman Brown ("Brown"). (Docket Entry # 13, Ex. C).

Upon further inquiry, plaintiff requested the Chief Steward to send Brown to the bridge. (Docket Entry ## 13 & 15). Ten to 15 minutes after the telephone call and while plaintiff was performing navigational duties in the pilothouse, Guiher approached plaintiff and struck him repeatedly eight to ten times. Guiher punched plaintiff in the arms, shoulders, chest, abdomen and hip. Plaintiff unsuccessfully attempted to push Guiher off his body. (Docket Entry # 13, Ex. C & D).

Leiva, who was on the bridge at the time of the attack, came to plaintiff's aid. Leiva temporarily pulled Guiher off plaintiff. While plaintiff was trying to reach for the telephone to call the Captain, Guiher broke free from Leiva's hold and struck plaintiff again. (Docket Entry # 13, Ex. E). Leiva then restrained Guiher, plaintiff telephoned the Captain and Guiher was taken to his cabin. (Docket Entry ## 13 & 15).

█ Plaintiff's testimony regarding when he first formed the impression that Guiher had dangerous propensities is contradictory.[3] At one point during his deposition, plaintiff testified that he first formed the impression that Guiher had dangerous propensities "[w]hen Leiva had his altercation with Guiher." (Docket Entry # 13, Ex. G). At another point, plaintiff testified that he never

---

3. When faced with contradictory evidence, this court views the record in the light most favorable to plaintiff, the nonmoving party, indulging all

reasonable inferences in plaintiff's favor. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

thought Guiher had dangerous propensities until ten to 15 minutes before Guiher's assault on plaintiff. (Docket Entry # 13, Ex. H). As noted above, except for issuing a verbal warning at the time of Guiher's assault of Brown, plaintiff did not feel it was necessary to take additional precautions at that time. When plaintiff received the telephone call from the Chief Steward on July 26, 1991, however, he formed the impression that Guiher needed physical restraint. (Docket Entry # 13, Ex. G).

## DISCUSSION

■ The standard for allowance of a summary judgment motion in an admiralty case is synonymous with that applied in non-admiralty cases. *Cf. Cerqueira v. Cerqueira,* 828 F.2d 863, 864–865 (1st Cir.1987) (admiralty action for negligence and unseaworthiness) and *Wynne v. Tufts University School of Medicine,* 976 F.2d 791 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993) (handicap discrimination action under 29 U.S.C. § 794). Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of plaintiff, the nonmoving party. *Space Master International, Inc. v. City of Worcester,* 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation,* 931 F.2d 162 (1st Cir. 1991) (record viewed in light most favorable to nonmoving party).

■ In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 41 (1st Cir. 1992) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Beck v. Somerset Technologies,* 882 F.2d 993

(5th Cir.1989) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists. Neither wishful thinking nor 'mere promise[s] to produce admissible evidence at trial' . . . nor conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990) (citations omitted). Furthermore, this principle is "not suspended in cases where conclusions must be drawn from agreed or uncontradicted facts." *Id.* at 116. In such a case, Rule 56 is properly invoked when "only a single conclusion is plausibly inferable from the uncontradicted facts." *Id.* at 116.

### I. *Jones Act Negligence*

■ Defendant seeks summary judgment on plaintiff's claims for negligence and unseaworthiness. (Docket Entry # 12). Turning to the former, liability under the Jones Act, 46 U.S.C.App. § 688, for negligence generally turns on whether there "was a failure to exercise the care which should have been exercised under the circumstances."[4] *Connolly v. Farrell Lines, Inc.,* 268 F.2d 653, 655 (1st Cir.), *cert. denied,* 361 U.S. 902, 80 S.Ct. 208, 4 L.Ed.2d 158 (1959).

As the starting point for its argument in support of summary judgment, defendant collects a series of cases for the principle that "[i]n no case has a shipowner been held negligent on the 'ship's business' theory." (Docket Entry # 13). This court disagrees. Although the above situation may comprise the normal case, it is not an all inclusive description of negligence liability under the Jones Act with respect to seamen assaults. As stated by one commentator:

> In situations not involving an assault on a seaman by his superior acting for the benefit of the ship's business, the shipowner can still be held liable on negligence principles if it is shown that he or the ship's master or officers failed in their

---

4. In addition to a showing of negligence, there must be a showing that the negligence played a part, however slight, in producing the plaintiff's

injuries. *Connolly v. Farrell Lines, Inc.,* 268 F.2d at 655.

duty to look out for the safety of the crew. In all such cases the plaintiff must prove that the assailant constituted a foreseeable risk to the plaintiff against which the shipowner had a duty to guard.

1A Ellen Flynn, Dale Cooper & Gina Raduazzo *Benedict on Admiralty* § 31, p. 3–247 & n. 14 (1993) (collecting cases); *see Koehler v. Presque–Isle Transportation Co.,* 141 F.2d 490, 491–492 (2d Cir.), *cert. denied,* 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed. 1591 (1944).

█ The pertinent inquiry into whether defendant exercised the appropriate standard of reasonable care under the circumstances is whether Guiher's assault constituted a foreseeable risk to plaintiff against which defendant, as the owner of the S.S. Tampa Bay, had the duty to guard. *See, e.g., Guzzi v. Seas Shipping Company, Inc.,* 270 F.2d 714, 715 (2nd Cir.1959) (upholding allowance of motion to dismiss at close of the plaintiff's evidence given lack of evidence that assailant was foreseeable risk of danger to the plaintiff). Stated otherwise, there must be some showing that defendant should have known that Guiher was a source of peril to those sailing with him. *Connolly v. Farrell Lines, Inc.,* 268 F.2d at 655; *see also Taylor v. Burns & Roe Services,* 1988 AMC 2003, 2004, 1988 WL 35919 (E.D.Pa.), *aff'd,* 860 F.2d 1075 & 1076 (3rd Cir.1988) (summary judgment allowed for stabbing injury to fellow seaman inasmuch as there was no duty to intervene absent notice on the part of the party with the duty to exercise reasonable care that harm was likely to befall the plaintiff).

Plaintiff emphasizes the fact that Guiher was drunk at the time of the assault. Although there is evidence to support the fact that Guiher was drunk at 5 a.m. on July 26, 1991, and that plaintiff was aware of Guiher's propensity to imbibe alcohol, there is no evidence in the record to suggest that the owner or officers of the S.S. Tampa Bay had notice, actual or constructive, that Guiher's drunkenness would result in the risk or peril of a shipboard assault. The prior incident contained in the record before this court was based on Guiher threatening Leiva. The record does not contain evidence that Guiher threatened Leiva with a knife or any other dangerous weapon. *See Connolly v. Farrell Lines, Inc.,* 268 F.2d at 655. Furthermore, *Connolly* is directly on point and plaintiff fails to adequately distinguish the facts therein from those in the case at bar.

In *Connolly,* the court upheld the lower court's directed verdict on Connolly's negligence claim. The assailant in *Connolly* had a prior incident of intoxication during which a knife found underneath his pillow. The subsequent assault occurred in a bar with the assailant lunging at Connolly with a three foot plank. The court stated that:

> There was no evidence that [the assailant] had been engaged in any fights or controversies prior to the incidents of February 15, 1957 either with Connolly or any other members of the crew or that he had ever threatened anyone with a knife or any other weapon prior to that date. There was no evidence that [the assailant] was an habitual violator of ship discipline except for the one occasion noted in the ship's log.... From the evidence presented by the plaintiff it cannot be said that the defendant was negligent in continuing to employ [the assailant] for there was no evidence that the defendant should have known [the assailant] was a source of peril to those who might sail with him or even that he was of a belligerent nature.

*Connolly v. Farrell Lines, Inc.,* 268 F.2d at 655 (citations omitted). Guiher's prior incident is remarkably similar and, in fact, slightly more benign than that of Connolly's.

Plaintiff nevertheless contends that there should have been an investigation by the Captain to determine under what circumstances a crew member was allowed to possess and consume alcohol aboard the S.S. Tampa Bay. Rather than offer specific facts supporting the allegedly negligent conduct in allowing the consumption of alcohol aboard ship, plaintiff generally "submits that there are fact issues in this case, namely: (1) Whether the defendant was aware of Guiher's previous problems that plaintiff is unaware of and (2) To what extent drinking of alcohol beverages is allowed aboard the defendant's vessel." (Docket Entry # 15). As previously stated, the promise to produce admissible evidence is not enough to defeat a

**516**

properly supported summary judgment motion. *Garside v. Osco Drug, Inc.*, 895 F.2d at 49. Nor, in light of *Connolly*, is this court persuaded that plaintiff has a viable negligence claim.

II. *Warranty of Seaworthiness*

■ While liability for Jones Act negligence turns on actual or constructive knowledge, liability for breach of the warranty of unseaworthiness is neither dependent upon fault nor contractual in nature. Rather, the owner has an absolute, nondelegable duty to provide a seaworthy ship. *Harbin v. Interlake Steamship Company*, 570 F.2d 99, 103 (6th Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1135 (1978). The warranty generally requires the owner to furnish "a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).

In *Boudin v. Lykes Brothers Steamship Co.*, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1954), the Supreme Court extended the warranty to encompass defective personnel as well as defective equipment.[5] In so doing, the Court approved the holding of the lower court:

> that Gonzales had crossed the line, that he. had such savage disposition as to endanger the others who worked on the ship [and]. . . . that Gonzales was not equal in disposition to the ordinary men of that calling and that the crew with Gonzales as a member was not competent to meet the contingencies of the voyage.

*Id.* at 340, 75 S.Ct. at 385. The Court cautioned, however, that the vessel owner is not "liable for injuries 'resulting from every sailors' brawl. It does not mean that the owner is liable every time a seaman gets drunk and does damage to a member of the crew. It does not mean that the owner is liable for injuries from all the fisticuffs on shipboard." *Id.* at 339, 75 S.Ct. at 384. The Court nevertheless reasoned that "[i]f the seaman has a savage and vicious nature, then the ship becomes a perilous place." *Id.* at 340, 75 S.Ct. at 385; *accord Harbin v. Interlake Steamship Company*, 570 F.2d at 103–104 (discussing *Boudin*).

■ In *Connolly*, the circumstances of the assault *per se* were insufficient to support a finding of an unseaworthy condition inasmuch as the assault was not "a premeditated attack with an unmistakenly deadly weapon." *Connolly v. Farrell Lines, Inc.*, 268 F.2d at 656. In addition and taking into account the prior incident of misconduct, the court found no independent evidence sufficient for the jury to infer that Connolly had a "savage disposition." *Id.* at 656; *see also Jones v. Lykes Brothers Steamship Company*, 204 F.2d 815, 817 (2d Cir.), *cert. denied*, 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370 (1953) (cited with approval in *Boudin* and *Connolly*; unseaworthiness generally found when assault was either with dangerous weapon or with independent evidence of assailant's exceptionally quarrelsome nature). In the case at bar, although there is evidence to indicate that Guiher's attack may have been premeditated, there is no indication that Guiher employed an "unmistakenly deadly weapon." Nor is there independent evidence in the record, i.e., Guiher's prior intoxicated conduct, sufficient to create a material issue of fact that Guiher had a savage disposition. While the line is sometimes difficult to draw, in light of *Connolly*, which plaintiff fails to cite let alone distinguish, this court finds summary judgment appropriate on plaintiff's unseaworthiness claim.

*CONCLUSION*

In accordance with the foregoing discussion, this court **RECOMMENDS**[6] that De-

---

**5.** In *Boudin*, the unfit crew member, Manuel Gonzales ("Gonzales"), assaulted the plaintiff after a night of drinking. Gonzales initially attacked the plaintiff in his bunk with a bottle of brandy. Thereafter, a series of incidents followed, including Gonzales returning to the plaintiff's room with a knife, creating a disturbance outside the ship's hospital, and leaving the ship against orders. *Id.* at 337–338, 75 S.Ct. at 382–384.

**6.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may

fendant's Motion for Summary Judgment (Docket Entry # 12) be **ALLOWED** and that counts I and II of plaintiff's three count complaint be dismissed.

respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).