USCA1 Opinion

 

 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 97-1776 JOHN FORD, Plaintiff, Appellee, v. WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY, Defendant, Appellant. ___________________ No. 97-2007 JOHN FORD, Plaintiff, Appellant, v. WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY, Defendant, Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FROM THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Selya, Boudin, and Lynch, Circuit Judges. ______________ ____________________ Thomas E. Clinton with whom Clinton & Muzyka, P.C. was on brief _________________ _______________________ for defendant. David F. Anderson with whom Latti Associates LLP was on brief for _________________ ____________________ plaintiff. ______________ February 20, 1998   ______________ Per Curiam. The Woods Hole, Martha's Vineyard and ___________ Nantucket Steamship Authority ("the Steamship Authority") appeals from a jury verdict awarding damages to John Ford. Ford was an able bodied seaman employed on the Steamship Authority's M/V Eagle, a passenger and car ferry operating between Hyannis and Nantucket, Massachusetts. On the day of Ford's misfortune, February 24, 1995, the Eagle was laid up for general maintenance in Woods Hole, Massachusetts.  The drama began when one of Ford's fellow seamen, Byron Costa, approached a paint trailer on the pier next to the ship. Danny Pryor, the ship's boatswain and Costa's brother- in-law, was with him. Costa was holding a "manhelper," a long wooden pole with a metallic tip, designed to connect to a paint roller to increase a painter's reach. Inside the paint trailer, another seaman named Serephine Rodrigues was responsible for distributing tools and mixing paint for use in maintenance tasks. Costa asked Rodrigues to mix him some epoxy paint; Rodrigues refused, citing his instructions that he was only to issue oil-based paints. A quarrel ensued, and Rodrigues eventually acceded to Costa's demands and began mixing the epoxy paint.  While Rodrigues was at work, Costa continued to argue with him. At some point, Rodrigues became frustrated and told Costa to "leave me alone" and "get back in the boat." Rodrigues also threw a light rag, which hit Costa in the head -2- -2- and slipped off. Costa swung the manhelper back with both hands and then forward in Rodrigues's direction.  Prior to this moment, Ford had approached the trailer to return some tools. While inside the trailer, he heard the altercation escalate and "knew something was going to pop." Ford emerged from the trailer just as Costa swung the manhelper at Rodrigues. The manhelper struck Ford in the hip and then glanced off Rodrigues's hand, which had been raised to ward off the blow. Ford has been seriously disabled by the resulting injury. Ford sued the Steamship Authority in the district court, alleging negligence under the Jones Act, 46 U.S.C. 688, unseaworthiness, and an entitlement to maintenance and cure under general maritime law.1 On October 28, 1996, a jury awarded Ford $740,000 for negligence and unseaworthiness, prejudgment interest at a rate of 6% (totaling $57,172.60), and $23,000 for maintenance and cure. The district court entered judgment on the verdict on November 26, and amended  ____________________ 1Both parties assume that the latter two claims fall under the admiralty jurisdiction of the federal courts. It is not entirely clear that they satisfy the "location test" of admiralty jurisdiction, namely, that the injury "occurred on navigable water or . . . injury suffered on land was caused by a vessel on navigable water." Jerome B. Grubart, __________________ Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 ____ _______________________________ (1995). But Ford's claim under the Jones Act provides federal question jurisdiction under 28 U.S.C. 1331, so the other claims fall within the court's pendent jurisdiction. See Romero v. International Terminal Operating Co., 358 U.S. ___ ______ ____________________________________ 354, 380-81 (1959). -3- -3- the judgment on May 1, 1997, after the Steamship Authority pointed out a mathematical error.  The Steamship Authority now appeals the verdict of unseaworthiness and negligence. At oral argument, the Steamship Authority correctly conceded that the verdict may be reversed only if the jury could not reasonably have found for Ford on either theory. Because we find that the verdict of unseaworthiness is supported by the record, we do not address the issue of Jones Act negligence, which involves the separate question whether the Steamship Authority was on notice of Costa's proclivity for violence. It is common ground that a vessel owner may be found in breach of the warranty of seaworthiness if one seaman is assaulted by another. Boudoin v. Lykes Bros. S.S. Co., 348 _______ _____________________ U.S. 336, 338-39 (1955). The decisive question is whether the assaulting seaman was "equal in disposition and seamanship to the ordinary men in the calling." Id. at 338 ___ (quoting Keen v. Overseas Tankship Corp., 194 F.2d 515, 518 ____ ________________________ (2d Cir. 1952)). Our limited task on appeal is to determine whether Ford presented enough evidence so that a rational jury could conclude that Costa was worse in disposition than the ordinary seaman. No one factor is conclusive in determining whether an assailant's disposition is substandard. We have held that a plaintiff may carry his burden of proof in two ways: either -4- -4- by showing that the particular assault on the plaintiff involved a dangerous weapon, or by adducing evidence of the assailant's "quarrelsome nature" in general. Connolly v. ________ Farrell Lines, Inc., 268 F.2d 653, 656 (1st Cir. 1959). Ford ___________________ presented evidence of both. There is little doubt that Costa hit Ford with a dangerous weapon, namely, a thick wooden pole five or six feet long and tipped with metal. The jury heard testimony stating that Costa was specifically attempting to hit Rodrigues, that he swung with both hands, and did not check his swing. Rodrigues also testified that his head was at the same height as the point where Ford's hip was struck. We do not think the jury would be irrational in concluding that this was a particularly violent act that revealed Costa's disposition to be unequal to that of ordinary sailors. The jury also heard evidence of Costa's penchant for violence on other occasions. Other seamen testified to two physical fights that Costa had instigated. Costa also once stated that he would kill another crewmember, although no violence ensued. A Steamship Authority captain who had worked with Costa testified that Costa had a reputation for belligerence. The Steamship Authority countered this evidence at trial and still disputes it, but the jury was entitled to accept the version of the facts favorable to Ford. -5- -5- Ford argues that the appropriate comparison of Costa's disposition is not with ordinary sailors generally, but with ordinary sailors employed by the Steamship Authority, whom Ford says are a pacific and docile group. Because it would not affect the outcome, we leave resolution of this issue for another day. Ford also cross-appeals on two procedural issues regarding, respectively, the Steamship Authority's failure to renew its motion for judgment as a matter of law and untimely filing of its notice of appeal. Both are moot in light of our ruling on the merits. Affirmed. ________ -6- -6-