**James NAPIER, Plaintiff,**

v.

**F/V DEESIE, INC., Defendant.**

**No. CIV.A. 02–12436–RBC.[1]**

United States District Court,
D. Massachusetts.

March 3, 2005.

1. With the parties' consent, on August 3, 2004, this case was reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

David B. Kaplan, Kaplan/Bond Group Boston Fish Pier, Boston, MA, for James Napier, Plaintiff.

Joseph A. Regan, Regan & Kiely, LLP, Boston, MA, for FV Deesie, Inc., Defendant.

Syd A. Saloman, Regan & Kiely LLP, Boston, MA, for FV Deesie, Inc., Defendant.

### MEMORANDUM AND ORDER ON DEFENDANT, F/V DEESIE, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT (# 26)

COLLINGS, United States Magistrate Judge.

#### I. Introduction

On December 27, 2002, plaintiff James Napier ("Napier"), a member of the crew of the F/V DEESIE, filed a complaint against the corporate entity F/V DEESIE, Inc. which owned, operated and controlled the F/V DEESIE. It is alleged that while the vessel was in navigable waters, Napier sustained serious personal injuries. As a consequence, the plaintiff alleges three counts against the defendant: a claim under the Jones Act (Count I), a claim of unseaworthiness (Count II), and a claim for maintenance and cure (Count III).

With discovery completed, F/V DEESIE, Inc. filed an amended motion for summary judgment (# 26)[2] together with a statement of undisputed facts (# 27) and a memorandum in support (# 28)[3]. The plaintiff has filed an opposition to the dispositive motion (# 29). With the record complete, the summary judgment motion is ready for decision.

---

2. The defendant had originally filed its motion for summary judgment along with the pertinent accompanying papers on August 2, 2004. However, because plaintiff's expert report had yet to be submitted at that time, F/V DEESIE, Inc. was granted leave either to withdraw or update that motion after counsel had the opportunity to review that expert medical report.

3. The defendant had previously filed an affidavit of Michael D. Apstein, M.D. (# 23) in support if its original summary judgment motion. That affidavit, too, shall be considered in the context of the amended motion.

## II. The Facts

The facts as recited are taken from the defendant's statement of undisputed facts.[4] In April of 2001 Napier, a resident of New Bedford, Massachusetts, was employed as a member of the crew of the F/V DEESIE. (# 27 ¶¶ 1, 3) On or about April 23, 2001[5], while working aboard the F/V DEESIE, the plaintiff was stuck by a fishing hook in the left side of his abdomen. (# 27 ¶ 4) Following the accident, the Captain of the F/V DEESIE "cut the barbed end of the hook off with bolt cutters and the plaintiff removed the hook, cleaned and bandaged the wound and returned to work." (# 27 ¶ 4)

The F/V DEESIE continued to fish for approximately two weeks after the plaintiff was injured, and then came in to port in Puerto Rico. (# 27 ¶ 5) Upon arriving in Puerto Rico, Napier immediately went to see a doctor who diagnosed the plaintiff as having an infection and prescribed antibiotics. (# 27 ¶ 6) On or about April 21, 2001, the plaintiff was brought to the University Hospital in Puerto Rico where he was admitted with symptoms of gastrointestinal bleeding. (# 27 ¶ 7) Napier himself was the only source of information for the University Hospital with respect to his medical condition and history. (# 27 ¶ 8)

According to the April 21, 2001 at 1:00 A.M. hospital records, the plaintiff was diagnosed with, among other things, "intravenous drug abuse." (# 27 ¶ 9) Napier's toxicology screening taken upon his admission to the hospital came back positive for cocaine and opiates. (# 27 ¶ 10) According to the hospital progress notes dated 4/21/01, the plaintiff admitted taking cocaine and heroin intravenously the previous day. (# 27 ¶ 11)

It is undisputed that "[t]he fishing hook itself did not directly lead to the duodenal perforation since it was not long enough to reach the posteriorly located duodenum in the abdomen." (# 27 ¶ 12)

## III. Discussion

The primary issue in this case is whether the fish hooking incident onboard the F/V DEESIE is causally related to the two separate surgeries that the plaintiff endured in Puerto Rico. Before addressing the substance of the plaintiff's claims, the parties' expert reports on the causation issue shall be examined.

The defendant has submitted the affidavit of a medical expert, one Michael D. Apstein, M.D., a physician specializing in Gastroenterology and Internal Medicine. (# 23 ¶ 1) After reviewing all of the pertinent medical records including those from the University Hospital in Puerto Rico and reciting the pertinent historical background (# 23 ¶¶ 1–5), Dr. Apstein opined as follows:

> In my opinion, held to a reasonable degree of medical certainty, Mr. Napier had a perforated ulcer which was more likely than not caused by cocaine use. The fishhook played no role in the perforation of the ulcer for several reasons: First, the hook entered the left lower portion of his abdominal wall near the

---

4. Under Local Rule 56.1, "[o]pposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried." Napier has submitted no such statement. As a consequence, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing part[y] unless controverted by the statement required to be served by opposing part[y]." Local Rule 56.1.

5. Although this date is taken from the allegations of the complaint, it is clearly in error since the first date on Napier's subsequent medical records is April 20, 2001.

front, according to his testimony. The duodenum that perforated is located in the right upper portion of the abdomen, posteriorly. It is at least two feet away from where the hook entered his abdominal wall. Second, the hook was not sufficiently large to penetrate into the abdominal cavity, but more likely remained solely in the muscle of the abdominal wall. Even if the hook entered the abdominal cavity, which, judging by his subsequent symptoms, it did not, it could not perforate the duodenum because the duodenum is located in the retroperitoneum, which is behind the abdominal cavity.

In my opinion, held to a reasonable degree of medical certainty, the fishhook did not cause or contribute to the cause of the plaintiff's perforated duodenal ulcer.

Affidavit of Michael D. Apstein, M.D. # 23 ¶¶ 6, 7.

The plaintiff, too, has submitted an expert medical report, this one authored by Roberto Feliz, M.D. In pertinent part, Dr. Feliz offers this opinion:

> Motrin, an NSAID, is traditionally known and well establish (sic) in the medical literature as causing ulcers— because Motrin inhibits prostaglandins production in the body (especially stomach). . . . This process usually takes days to weeks to develop, especially in patients with history [sic] of ulcers.
>
> Cocaine raises blood pressure (the reason why cocaine users develop sudden stroke and myocardial infarction) but it is not classically known to significantly directly cause ulcers like the strong association between ulcers and Motrin.
>
> Moreover, it is unlikely that an individual takes cocaine (nasally or intraveneously [sic]) and within a few hours would develop a duodenal ulcer and perforation. A very unlikely scenario. It is

more likely that Mr. Napier who has a pre-existing history of ulcers, took Motrin, develops gastritis/ulcers and because it is not treated promptly goes on to perforate the ulcer and bleeds/hemorrhage [sic].

\* \* \* \* \* \*

> It is my opinion, however, that having a fish hook imbedded in one's abdomen leads to pain and a tremendous degree of stress. The pain required treatment, which in this particular case *appeared to have been treated* with the combination of aspirin and Motrin an NSAIDS (sic). These combinations are known to cause gastric ulcers especially in patients with history of ulcers . . .
>
> Based upon the above I conclude that there is a causal relationship between the injury sustained with the hook and the subsequent development of a duodenal ulcer/perforation/hemorrhage and its later complications.

Plaintiff's Opposition # 29 (emphasis added).

The highlighted phrase is crucial as there is absolutely no factual basis in the record before the Court upon which Dr. Feliz's opinion could have been predicated, i.e., there is no evidence that Napier was given, or in fact took, any aspirin or Motrin after he was speared by the fish hook. The supposition "appeared to have been treated" is inadequate to carry the day.

The only reference to aspirin or Motrin in the record, even including the plaintiff's answers to interrogatories and the portions of Napier's deposition proffered by the defendant, is a snippet from the deposition of Barry Marx, the captain of the F/V DEESIE, quoted in the plaintiff's opposition: "Q. What did you do for people that have pain? A. Aspirin." (# 29 at 2) That statement alone is not enough to establish either that Marx or anyone else

aboard the F/V DEESIE gave Napier aspirin after the accident or that the plaintiff ingested aspirin or Motrin.

In the absence of any facts to support it, the plaintiff cannot rely upon Dr. Feliz's opinion to establish the causative link between the fishing hook injury and the ulcer surgeries in Puerto Rico. *Schubert v. Nissan Motor Corp. in U.S.A.*, 148 F.3d 25, 31 (1 Cir., 1998). Without Dr. Feliz's opinion, Napier has proffered no evidence whatsoever on the issue of causation.[6] *Schubert*, 148 F.3d at 31–2.

▮ Given these circumstances, resolution of Napier's claims is fairly straightforward. Count I of the complaint is a claim under the Jones Act, 46 U.S.C.App. § 688. In order to prevail on this claim, it is incumbent upon the plaintiff to offer evidence to show that the defendant's negligence "played any part, even the slightest, in producing the injuries for which the plaintiff seeks damages." *Connolly v. Farrell Lines, Inc.*, 268 F.2d 653, 655 (1 Cir.), *cert. denied*, 361 U.S. 902, 80 S.Ct. 208, 4 L.Ed.2d 158 (1959) citing *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)("Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."). Napier has not offered a scintilla of evidence on the issue of causation and so his claim must fail.

Count II, the unseaworthiness claim, must suffer a similar fate. The First Circuit has written that:

In order to prove a claim of unseaworthiness, a plaintiff must show that the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries. *Gosnell v. Sea–Land Service, Inc.*, 782 F.2d 464, 467 (4th Cir.1986); *see also Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir.1984); *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1040, 1042 (5th Cir.1982); *see generally* 1B Benedict on Admiralty § 28, at 3–162 to 166 (7th ed.1980). Arguendo that the lack of instruction could be considered unseaworthiness, the appellants have failed to prove that the omission was the proximate cause.

To meet the traditional common law burden of proving proximate cause in an action based on unseaworthiness, plaintiff must show that:

> the act or omission [is] a cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the results complained of, and without which it would not have occurred.

1B Benedict on Admiralty, *supra*, at 3–162.

*Brophy v. Lavigne*, 801 F.2d 521, 524 (1 Cir., 1986).

Again, with the plaintiff having failed to produce any evidence to show that the hooking accident is causally related to the hospitalization and surgeries, the unseaworthiness claim must be dismissed.

---

**6.** In his opposition,

The Plaintiff states that at earlier court appearances...the consensus of the Court and the parties was that the Defendant's Motion for Summary Judgment would be allowed unless the Plaintiff was able to present a medical report from a qualified doctor indicating a cause/relationship between the incident wherein the Plaintiff had a 5″ fishing hook imbedded in his body and the medical condition that necessitated hospitalization and two separate surgeries in Puerto Rico.
Plaintiff's Opposition # 29 at 1.
That is precisely the position in which Napier now finds himself.

The claim for maintenance and cure, Count III of the complaint, requires a more detailed analysis. Almost seventy years ago, the First Circuit observed that:

There is nothing better settled in the maritime law than that seaman are entitled to their wages with a reasonable allowance for their maintenance and cure, if taken ill, in the service of the ship or from being incapacitated from causes incident to their employment; but the right to maintenance and cure does not include liability for diseases or injuries arising from their own vices or gross acts of indiscretion.

*Rawding v. Hooten,* 1937 A.M.C. 347, 351, 88 F.2d 125 (1st Cir.1937).

■ In a comparable vein, the Supreme Court has had occasion to explain that the:

employer's [of the seaman] responsibility for maintenance and cure extends beyond injuries sustained because of, or while engaged in, activities required by his employment. In this respect it is a broader liability than that imposed by modern workmen's compensation statutes. Appropriately it covers all injuries and ailments incurred without misconduct on the seaman's part amounting to ground for forfeiture, at least while he is on the ship, 'subject to the call of duty as a seaman, and earning wages as such.'

*Aguilar v. Standard Oil Co. of N. J.,* 318 U.S. 724, 732, 63 S.Ct. 930, 87 L.Ed. 1107 (1943) (citations and footnote omitted). Thus, while a seaman's right to maintenance and cure surely is broad, a recognized exception to that general rule is that the entitlement is lost if the seaman's injury is the result of his own willful misconduct. In other words, "if the seaman's injuries are caused by the *willful misbehavior* of the seaman, the employer may

have a defense to maintenance, cure and unearned wages." Charles M. Davis, *Maritime Law Handbook* § V.A.4 at 105 (1997)(emphasis in original); *see also Des Jardins v. Foss Maritime Co.,* 1993 WL 521785, 1993 A.M.C. 2233, 2234–36 (W.D.Wash., 1993).

■ The defendant argues that Napier's injury was caused by his own willful misconduct, i.e., the intravenous use of heroin and cocaine. Although there appears to be no case law directly on point, the defendant likens the plaintiff's abuse of drugs to alcohol abuse, conduct which has repeatedly been found to constitute willful behavior such as to cut off the shipowner's liability for maintenance and cure. *See Aguilar,* 318 U.S. at 730, 63 S.Ct. 930 ("Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. The traditional instances are veneral [sic] disease and injuries received as a result of intoxication, though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore. Other recent cases however er disclose a tendency to expand these traditional exceptions."[7]); *Des Jardins,* 1993 A.M.C. at 2234 ("The central question in the case is whether an illness caused solely by the seaman's alcohol abuse falls within the 'willful misconduct' exception to the rule requiring payment of maintenance and cure. The authorities closest in point suggest that the answer is yes."); *Blouin v. American Export Isbrandtsen Lines, Inc.,* 319 F.Supp. 1150, 1154 (S.D.N.Y., 1970)("Although a seaman may recover maintenance and cure for a pre-existing illness that manifests itself while the seaman is in the service of the ship, Gilmore and Black, *The Law of Admiralty* (1957), p. 254, if the manifestation of the illness results solely from the seaman's intoxi-

---

**7.** Citations and footnotes omitted.

cation then it is the seaman's own misconduct which caused the illness, *Barlow v. Pan Atlantic S.S. Corporation*, 101 F.2d 697, 698–699 (2d Cir.1939), *Victoria v. Luckenbach S.S. Co.*, 141 F.Supp. 149 (S.D.N.Y.1956), Weinfeld, J., *aff'd* 240 F.2d 349 (2d Cir.1957), and maintenance and cure should be denied, *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).") The defendant's analogy is appropriate and compelling. The Court finds that the use of heroin and/or cocaine, like the abuse of alcohol, could constitute willful misconduct.

The defendant has offered hospital records which reflect that Napier stated at the time he presented at the hospital in Puerto Rico that he had taken drugs intravenously. Moreover, the tests performed upon his arrival at the hospital showed positive for the presence of opiates. Dr. Apstein has opined that the cause of the plaintiff's perforated ulcer "was more likely than not caused by cocaine use." [8] (# 23 ¶ 6)

However, at his deposition Napier testified that he had never done cocaine (# 27, Exh. C at 74), he denied ever doing drugs with his shipmates Sean or Don (# 27, Exh. C at 76), and he stated that his doctor had told him that he could not drink or do drugs of any type because it would hurt him (# 27, Exh. C at 76). Moreover, during a later colloquy the plaintiff testified as follows:

Q. In that motel room that you were in, did you take any drugs?

A. No.

Q. Specifically, did you take cocaine or heroine [sic]?

A. No.

Q. Were you taking drugs intravenously?

A. No.

Q. Do you know what intravenously means?

A. If you inject it.

Q. In the arm?

A. Yes.

Q. Were you taking drugs intravenously?

A. No.

Statement of Undisputed Facts # 27, Exh. C at 127.

In answer to another question Napier again reiterated that he "never used heroine [sic] or cocaine in [his] life." (# 27, Exh. C at 136) He also denied having told the medical personnel at the hospital in Puerto Rico that he had been using heroin and cocaine intravenously. (# 27, Exh. C at 139)

Based upon this deposition testimony, there is clearly a genuine issue of material fact that needs to be decided at trial, to wit, whether Napier used heroin and/or cocaine prior to his admission into the hospital in Puerto Rico. The Court cannot credit the medical records and discredit plaintiff's testimony as a matter of law. Further, on summary judgment, the Court must take the facts in the light most favorable to the non-moving party, i.e., the plaintiff. Whether the defendant can prove that the plaintiff is foreclosed from receiving an award for maintenance and cure as a result of willful misconduct on his part is, on this record, for the jury to decide.

---

**8.** Plaintiff's expert, Dr. Feliz, states that "[c]ocaine raises blood pressure...but is not classically known to significantly directly cause ulcers like the strong association between ulcers and Motrin. Moreover, it is unlikely that an individual takes cocaine...and within a few hours would develop a duodenal ulcer and perforation." (# 29) Thus, while Dr. Feliz believes that the scenario is improbable, he does not say that it is impossible.

### IV. Order

For the reasons stated it is ORDERED that Defendant, F/V DEESIE, Inc.'s Amended Motion For Summary Judgment (# 26) be, and the same hereby is, ALLOWED as to Count I and II and DENIED as to Count III.